St. Louis Mutual Life Ins. Co., Appellant, *vs.* The Board of Assessors of St. Louis County, *et al.*, Respondents.

1. *St. Louis Circuit Court—Writ of error to General Term.*—Under the statute and the rules of court provided in pursuance thereof, a writ of error will lie from a final judgment of the Circuit Court of St. Louis County in special term, to the general term of that court.

2. *Insurance, life—Capital Stock—Taxation, what property subject to.*— Section 40 of the act touching life insurance, (Wagn. Stat., 752) provides that the payment of certain fees by the respective companies, shall be "in lieu of all fees and taxes whatever, except that they may be taxed upon their paid up capital stock the same as other property in the county, for county and municipal purposes." *Held*, that this provision, properly construed, did not prevent the taxation of other property owned by the companies, over and above the par value of their capital stock. Such is not double taxation. But the non-taxation of such property would amount to an exemption, in violation of the State Constitution. (See Life Association of America vs. Board of Assessors, etc., 49 Mo., 512.)

3. *Revenue—Double taxation not necessarily void.*—In levying taxes on property, the same value is sometimes unavoidably taxed twice; but this fact does not, of itself, render the tax illegal and void.

*Appeal from St. Louis Circuit Court.*

*Cline Jamison & Day*, for Appellant.

I. There is nothing in rule 57 that authorizes the issuing of a writ of error—the rule relates merely to the filing of briefs.

II. If writs of error are allowed in cases of this character, they might lie for an indefinite time after judgment in the Circuit Court, and then might be taken up to the General Term, and after being disposed of there, plaintiff in error would still have three years more within which to go to the Supreme Court.

III. A writ of error will not lie to bring up any matter from an inferior court where an appeal is provided for. In such case the party must take his appeal in the manner provided for by the statute. (Matson vs. Dickerson, 3 Mo., 339; North Mo. R. R. Co. vs. Parks, 34 Mo., 159.)

IV. The assessment of the "loans, securities and bonds" amounted to a double assessment of the property of the company, and so far forth was it illegal and void. All of the

provisions of the law relating to the assessment of the property of corporations having a capital stock, contemplate that assessments shall be made on the capital stock, and on that alone. (Wagn. Stat., 752, § 40; *Id.* 1169, §§ 19, 23, 24, 25; *Id.* 1188, §§ 28, 29; St. Louis Mut. L. Ins. Co. vs. Charles, 47 Mo., 462; State vs. Han. & St. J. R. R. Co., 37 Mo., 265.)

So far as the tax is a double one, it is illegal, not being authorized by the legislature, and is, in fact, impliedly, if not expressly, prohibited by the provision of the bill of rights, wherein it is declared that property shall be taxed in proportion to its value. The personal property of a corporation and its capital stock cannot be taxed at the same time. (Tax Cases, 12 Gill. & Johns, 117; Gordon's Ex'r vs. Mayor of Baltimore, 5 Gill., 231; State vs. Tunis, 3 Zab., 546.)

*Thomas C. Reynolds*, for Respondents.

I. The St. Louis Circuit Court can review, by writ of error, in General Term, decisions made at Special Term. In rule 57, (p. 20) in force when this suit was pending before it, " a writ of error " is expressly named. But this court will not interfere with a Circuit Court's construction of its own rules and practice, except in an extreme case. (Funkhouser vs. How, 18 Mo., 49.)

By § 15 of Art. VI of the Constitution, the judges of the St. Louis Circuit Court are explicitly constituted "a court in bank, to decide questions of law, and correct errors occurring in trials." Of course this included the power to issue the old common law writ of error. Even had the legislature the right to regulate that constitutional power of the St. Louis Circuit Court, it has not done so except to confirm it. Section 14 of the act of Dec. 19 1865, to provide for the organization of the St. Louis Circuit Court, &c., (Gen. Stat., 1865, p. 889) not substantially changed by act of 1869 (pp. 16, 17), recognizes the amplest power of the court to make its own rules and regulate the practice under them.

II. The question of legality of the assessment in this case was decided in Life Association vs. Board of Assessors, &c.,

(49 Mo., 512.)   The assessment was not void on the ground that it subjected the same property to double taxation.   The State taxes the holder of a note, and also the property of the maker, although the value of the former depends on the latter, or it may be valueless because the maker's property is mortgaged to its full value.   So, also, stock may be valued and taxed at its value, and also the corporation property, on the net value on which the value of the stock depends.   A corporation may own millions of taxable property, and yet its contingent liabilities be so great that its stock becomes utterly valueless.   Shall the former therefore escape taxation?

VORIES, Judge, delivered the opinion of the court.

The plaintiff filed in the St. Louis Circuit Court a petition for a writ of *certiorari* against the defendants, in which it was charged, in substance, that it was a corporation duly organized for the purpose of making assurance upon the lives of individuals, and every assurance connected with the business of Life Insurance Companies; that by virtue of an act entitled "An act for the incorporation and regulation of Life Insurance Companies," approved March 10, 1869, it was provided that every company doing said business in this State shall pay to the Superintendent of the Insurance Department, certain fees and sums of money, which shall be in lieu of all taxes, fees and licenses whatever, collected for the benefit of the State, and should further be in lieu of all fees or taxes whatsoever, except that said companies might be taxed upon their paid up capital stock, in the same manner as other property in the county, for county and municipal purposes.

The petition avers that the plaintiff had paid all of the fees required by the law, and that the plaintiff had a paid up capital of one hundred thousand dollars, and that by the law it was only liable to pay the fees provided for, and the taxes assessed on the paid up capital stock; that the board of assessors had assessed a tax for the year 1870, not only on said capital stock, but also on personal property belonging to the plaintiff, of the value of $1,150,000, which is described in

the assessment as "loans, securities or bonds," which said assessment is charged to be illegal; that plaintiff duly appealed from said assessment, and had asked defendant sitting as a board of appeals, by virtue of the provisions of the statute, to correct and adjust said assessment, and strike out the assessment on said "loans, securities or bonds," from the book of assessments, which said board of appeals refused to do; and avers that a warrant will be issued to the collector of St. Louis county, for the collection of the same, and irreparable damage done the plaintiff. Wherefore a writ of *certiorari* is prayed, &c., and that said assessment be annulled and set aside, &c. The record sent up with the return of the defendants to the writ was as follows:

"Appeal No. 217." "To the Court of Appeals of St. Louis county, District No. 3."

"St. Louis County, Mo., May 14, 1870."

"I hereby appeal from the present assessment upon property listed in the name of St. Louis Mutual Life Insurance Co., and described as follows: 'Loans, securities or bonds $1,150,000.' The reasons for making this appeal are the following: That the said loans, securities or bonds belonging to the St. Louis Mutual Life Insurance Company, designated in said assessment, as of the value of $1,150,000, and which are assessed or listed against said Company, are improperly, wrongfully and illegally assessed as aforesaid against said Company, inasmuch as by section 40, and other sections of an act entitled "an act for the incorporation and regulation of Life Insurance Companies," enacted by the General Assembly of the State of Missouri, approved March 10, 1869, said Company is made liable for the payment of certain fees in said section 10 mentioned, which by said act is made in lieu of all taxes or fees against said Company, except that said Company may be taxed upon its paid up capital stock in the same manner as other property in the county, for county and municipal purposes, and said Company has already, and separately, or in a separate item from the said "loan, securities or bonds," been assessed for its paid up capital stock." "Second, be-

St. Louis Mut. Life Ins. Co. v. Board of Assessors of St. Louis Co. et al.

cause the said assessment on the said "loans, securities or bonds," amounts to a double assessment against said Company, the said paid up stock of said Company, being represented in and comprehended in said loans, securities or bonds."

The record further shows, that the points made by the plaintiff before said board of appeals were overruled, and disallowed.

The case was heard in the St. Louis Circuit Court, upon the return of the writ of *certiorari*, and the court held said taxes to be wrongfully and illegally assessed, and declared the same to be of no effect, and declared the same to be reversed and in all things made void.

The defendants filed a motion for a new trial, which being overruled, they excepted and appealed to the General Term of the St. Louis Circuit Court. This appeal was dismissed on the motion of the plaintiff on the ground that the appeal had not been taken and the bill of exceptions filed in the time required by the rules of the court.

The defendant then moved the court at General Term for a writ of error to the Special Term to send up the record and proceedings in that court to the General Term, on the ground that manifest error appeared on the record in the cause. This motion was sustained and the record sent up to General Term by virtue of said writ of error.

The plaintiff afterwards appeared in the court at General Term, and moved the court to dismiss the cause for the reason that there was no law nor rule of court authorizing a cause to be removed from Special to General Term by writ of error, after final judgment in Special Term. This motion being overruled by the court, the plaintiff excepted.

The court then, upon a hearing and consideration of the cause, reversed the judgment rendered at Special Term and remanded the case. The plaintiff appealed to this court.

It is insisted by the plaintiff that the Circuit Court in General Term erred in overruling the motion filed by plaintiff to dismiss the cause, on the ground that a writ of error would not lie, or could not be issued by the General Term of the St.

Louis Circuit Court upon a final judgment rendered at Special Term.

By the 15th section of the 6th article of the constitution it is provided that "from and after the first day of January, one thousand eight hundred and sixty-six, the Circuit Court of the county of St. Louis, shall be composed of three judges, each of whom shall try causes separately, and all, or a majority of whom, shall constitute a court in bank to decide questions of law, and to correct errors occurring on trials; and from and after that day there shall not be in said county any other court of record having civil jurisdiction, except a Probate Court and a County Court." The number of judges constituting said court has since been increased to five.

By the 9th section of an act of the General Assembly of this State for the re-organization of the St. Louis Circuit Court, it is provided that "the said Circuit Court, after the day aforesaid, shall hold General and Special Terms as the business thereof may require. A General Term is when the court sits as a court in bank," &c. By the 11th section of said act it is provided that "a Special Term is where only one judge presides, and is for the trial of causes, and the transaction of all other business not specified in the next preceding section, and each judge at Special Term, with that exception, shall have, and exercise, all the powers and functions which he might have and exercise if he were the sole judge of the court."

The 10th section as amended by the act of February 25, 1869, provides that "at General Term the said Circuit Court shall hear and determine points of law reserved at Special Term, and all appeals taken from any final judgment or decree rendered, or order made at Special Term ; and when an appeal is taken from a final judgment or decree rendered at Special Term, such appeal shall operate as a *supersedeas* unless the court at Special Term shall otherwise order; in which case the judge may grant a stay of execution, pending such appeal, in like manner and on the same terms as provided for by law in cases of appeal from final judgment of the General Term to the Supreme Court.

Section 14 of said act as amended by the act of 1869, provides that a judgment, or decree or order made at Special Term may be reversed, vacated or modified at General Term, for errors appearing in the record at Special Term, or presented by exceptions taken thereat, &c. And it is further provided by said section, that "said court shall prescribe by rule the manner in which judgments, orders and decrees rendered or made at Special Term, shall be brought up to General Term for review, and remanded thence to Special Term. And in addition to the ordinary power of making rules, conferred by general law, the court may make all rules which its peculiar organization may, in its judgment, require, different from the ordinary course of practice, and necessary to facilitate the transaction of business therein."

Under the provisions of this statute the said court at General Term made a set of rules, the eleventh of which provides, that "from all judgments and decrees rendered, or orders made at "Special Term" any party aggrieved, if he desires to apply to the General Term to have the same vacated, reversed or modified, shall within five days (if the term shall so long last, if not then before the end of the term) after rendition of such judgment or decree, or the making of such order, pray for an appeal to said General Term, which shall be allowed; and if the errors conplained of do not appear in the record, then the same shall be preserved by exceptions taken to such Special Term."

There is no rule providing specially for a writ of error, or for any cause being removed by writ of error from the Special to the General Term, but it is provided by the 57th rule adopted by said court at General Term, that "the appellant, or plaintiff in error, shall, before the case is called for hearing in General Term, file a concise statement of the material facts of the case, and the points of law, together with a citation of authorities upon which he relies. If this rule be not complied with, the court may either affirm the decision of the court at Special Term, or dismiss the appeal or writ of error at its option."

Now it is insisted by the plaintiff, that a writ of error cannot lawfully be issued to bring up any matter from an inferior court where an appeal is provided for; that in such case a party must take his appeal in the manner provided for by the law, or in the present case by the rules of the court.

In the case of North Missouri Railroad vs. Parks (34 Mo., 159), it is held, that a writ of error will not lie to a court vested only with a special jurisdiction. The learned judge delivering the opinion of the court, uses this language : "It is well settled by authority in this country, that in the absence of any statutory permission, the writ of error will not lie to a court vested with special jurisdiction, and which does not proceed according to the forms of the common law."

Neither the County or Probate Courts of this State possess common law jurisdiction, though declared by statute to be courts of record. They are courts of special jurisdiction, with powers defined and limited by statute. It is clear then, that a writ of error does not lie to them unless authorized by statute. This is doubtless the general rule, but the St. Louis Circuit Court is not a court of special jurisdiction. It has common law powers and can exercise common law jurisdiction. The power is given to the St. Louis Circuit Court at General Term to prescribe by rules, the manner in which judgments rendered at Special Term shall be brought up to General Term for review. The court, in conformity to the power given it, provided by rule the manner in which an appeal could be taken ; and evidently believing that a writ of error was a writ of right, which required no special authority from it to authorize its issue, in rule 57 before quoted recognized and provided for such writs by providing that plaintiff in error should file statements, &c., and that if such statement &c., were not filed, the writ of error might be dismissed, &c. This rule clearly recognizes the right in a party to sue out a writ of error and bring up a case from Special Term by that process, and as the court making these rules has construed the rules made by itself, and can better understand their intention and objects than this court, we will not interfere with their decision on that subject.

The next question presented in this court is, as to the correctness of the decision of the Circuit Court at General Term, in reversing the judgment rendered at Special Term.

The ground, or cause, relied on by the plaintiff in his petition for a *certiorari*, and in his appeal before the board of assessors upon its appeal from the assessment, was, that plaintiff was a Life Insurance Company, chartered by the laws of this State, having a paid up capital stock of one hundred thousand dollars; that therefore, it could only be taxed on its capital stock, and the assessment of one million one hundred and fifty thousand dollars, made on its loans, securities and bonds, was illegal and void; that it was not liable for any further taxation than the fees paid by it as provided for in section 40, of the Insurance law, referred to in its petition, and a tax on its capital stock; and it was also charged that the taxation levied on its bonds, &c., would amount to a double taxation.

There is no pretense that the plaintiff did not own the bonds and other securities taxed, or they were estimated at a value over their true cash value.

It is not shown by the records that the plaintiff had been taxed on its capital stock, but it is so charged in the petition for a *certiorari* and nowhere denied, and the Special Term having found for the plaintiff, it is fair to presume that the capital stock had been assessed. The question presented in this case is, whether any tax can be assessed against a life insurance company having a capital stock, under the laws of this State, upon property owned by such company in addition to a tax which is levied on its capital stock? The law, under which it is claimed in this case that the property is not taxable, is the same relied on in the case of the Life Association of America vs. The Board of Assessors of St. Louis County, 49 Mo., 512. The law relied on in each case is the following clause contained in the 40th section of the law in reference to Life Insurance (Wagn Stat., 752): "All companies organized under the laws of this State, and doing the business mentioned in the first section of this act, shall pay all fees as required by

this section, which shall be in lieu of all fees or taxes whatever, except that they may be taxed upon their paid-up capital stock, the same as other property in the county, for county and municipal purposes." In the case here referred to, it was urged, that the fees paid and provided for as in lieu of other taxes, amounted to a commutation of the taxes or of the amount of taxes to be paid, and not to an exemption of property from taxation—which was prohibited by the Constitution.

The learned Judge, delivering the opinion of the court in that case, after examining all of the points made in the case as well as the authorities on this subject, uses this language: "No such difficulty environs this court in deciding this question. The constitution is now to be construed for the first time, and the determination herein will not interfere with property rights based upon a different adjudication. The section by which freedom from taxation is claimed is more an exemption than a commutation. It does not provide for the payment of any sum to the general revenue in lieu of taxes, but only certain fees for the support of an officer. It is incredible, that the Legislature intended that taxes on hundreds of thousands of dollars, which may come into the hands of wealthy corporations, should be commuted for the yearly payment of a hundred and fifty or two hundred dollars in official fees. But I am not inclined to the belief, that this power of commutation exists under our present constitution. The literal reading of the two clauses hereinbefore referred to is surely in opposition to it. The constitution by its injunction that no property shall be exempt from taxation, and the requirement that it should be taxed in proportion to its value, was framed with the express view of remedying a great mischief. It is well known, that under the former constitution, the burdens of taxation were often unequal and unjust. Capitalists and corporations were in the habit of getting exemptions, so that a large portion of their wealth was withdrawn from paying its proportionate share in administering the government, and a corresponding increase was thrown on those who were least

able to pay. * * * It was to avoid this injustice and to cut off all importunity for class legislation, that the Constitution made the provision forbidding all discrimination. But if what was intended as a safeguard for the people's rights can be avoided by granting an immunity, under the pretense of accepting the merest trifle as a commutation, the instrument is practically nullified and the clause is a sheer delusion."

It is further held in that case, that as the corporation owned the property and had it in its possession, there was nothing to prevent its assessment under the general revenue law.

It is, however, contended by the plaintiff in this case, that the law authorizing the paid up capital stock of the plaintiff to be taxed, necessarily precludes the idea that any other property belonging to it should, be subject to taxation ; that all of the property belonging to a corporation in a stock company is necessarily included in its capital stock, and that to permit the capital stock of a corporation to be taxed and also the property belonging to the company, would be double taxation ; that in the case in the 49th Mo., above referred to, the company taxed had no capital stock, and therefore, in that particular, that case differed from the one now under consideration. It is very true, that this court, in the case of Hannibal & St. J. R. R. Co. vs. Shacklett (30 Mo., 550), decided that the property of the company, "consisting of the road-bed, depot, cars, locomotives, and all the real and personal property necessary for the operation of the road, was not liable to taxation under the general revenue laws, for State and county purposes in any county ; that the company was exempted by its charter from such taxation ; that the property above mentioned was to be considered as being represented by the stock, which was to be assessed and collected in a mode specifically pointed out by law. This same view of the law was afterwards taken in the case of The State vs. Han. & St. Jo. R. R. Co. (37 Mo., 265), the court holding in this last case, that all property belonging to the Railroad Company was represented by its capital stock, and that it could make no difference how much property the company owned, it would all be represented by the stock of

the company ; that the stock would rise and fall just in proportion to the value of the property owned by the company. It must, however, be recollected, that these decisions were made under charters granted before the adoption of our present constitution, which provides that no property shall be exempted from taxation, except in a few cases specifically pointed out.

In a later case decided in this court (The St. Louis Mut. Life Insurance Company vs. Charles, 47 Mo., 462), the action was brought to recover back from the collector, money which, it was alleged, had been illegally assessed and collected by the defendant. The company was a stock company and had a capital stock of the par value of $100,000.00. This stock was assessed, and, in addition to the stock, there was assessed for the same year against said corporation a tax upon all property owned by it, consisting of money loaned and on hand, amounting to the sum of $300,000. It was charged that the company had paid the tax thus assessed under protest, and that, under the law of the State, no property of said corporation is liable or subject to taxation for any purpose ; that only the capital stock ($100,000) of the corporation is subject to taxation. The assessment in that case was made under the act of Feb'y 4, 1864, which provides for the taxation of "shares of stock in banks and other incorporated companies and of property owned by incorporated companies, over and above their capital stock."

The learned judge, delivering the opinion of the court in that case, uses this language: "It is often the case, and the petition shows it to have been so in this instance, that the nominal stock, or the amount actually paid in by the stockholders represents but a part of the capital stock of the company. This company had, by its own showing, acquired at least three times the amount of its original stock, all of which, in private hands, would have been subject to taxation. There was no law that exempted it in the hands of the company. It might have been erroneously assessed, and perhaps should have been considered in valuing the stock in the hands of the

shareholders. In that case, the stock would have been valued at least at $300,000, for it represented so much taxable property. Or, perhaps a portion of this amount was held by the plaintiff over and above its capital stock. Upon this point, the petition fails to advise us, but contents itself with the erroneous statement, in face of the statute, that no property of the plaintiff is liable to taxation. In either case, it should have been assessed, either in fixing the value of the stock or as property held in excess." The judgment in that case was for the defendant.

In the case we are now considering, it is not pretended that the capital stock of the plaintiff was assessed at anything over its par value, and yet it is admitted by the petition for the writ of *certiorari*, that the plaintiff owned the securities assessed, to the value of one million, one hundred and fifty thousand dollars, eleven and a half times the amount of the par value of the capital stock taxed. And yet it is contended, that all of this amount is represented by the capital stock of one hundred thousand dollars, and cannot be further taxed without double taxation. It is insisted, that all of the property of a corporation is represented by its capital stock, whether much or little, that if the corporation acquire property, the stock will become more valuable in proportion, and if the property is decreased the value of the stock is diminished in the same proportion. I think that this assumption is not necessarily true, and, in fact, not usually true. A corporation, having a paid-up capital of one hundred thousand dollars, might become the owners of one million dollars worth of property, and at the same time it might have contracted debts to the same amount. How would this increase the value of the stock? The value of the stock, if the debts had been created by bad management, would rather be diminished than increased, and yet, if only the capital stock could be taxed, one million dollars worth of property would be withdrawn from taxation in the hands of the corporation. It is argued that this would be double taxation, as the debts of the corporation would be taxed in the hands of the creditors of the cor-

poration. It would be difficult to see how this would be double taxation in any other sense than it would be to levy a tax on a farm worth one thousand dollars, owned by a man who was also indebted in a sum of an equal amount, and yet no one questions but that this may be done. In the latter case, it is the property that is taxed, and not what the owner is worth after the payment of his debts.

I can see no reason why a different rule should be adopted in reference to corporations. The constitution provides, that no *property*, *real or personal*, shall be exempt from taxation except, &c.

The law provides, that the *property* belonging to a corporation over and above its capital stock shall be taxed, &c. So it will be seen, that it is not what an individual or corporation may be worth over and above what either may be indebted, which is taxed, but it is the property owned by either on which the tax is levied. In levying taxes on property, it cannot be avoided that the same value will sometimes be twice taxed, but this does not make the tax levied illegal or void.

The most that could be claimed in justice by the plaintiff in this case, is that the amount of its capital stock should be deducted from the whole amount of its property and assets, when the capital stock is assessed at its par value, and the remainder of its entire assets be taxed as property over and above the capital stock. This seems to be the rule adopted in the last decision before referred to or I should doubt whether any amount could be deducted from the property owned by a corporation since our present constitution. If the property of the plaintiff was overtaxed, it ought to have applied to the proper authorities to have the assessment corrected; whether that could still be done we need not now decide. No such case is presented. The only question presented is, whether the plaintiff's *property* can be taxed at all, although it may amount to ten times the value of its capital stock; we think it can.

The judgment of the Circuit Court at General Term is affirmed, and the case remanded to Special Term for further proceedings. The other judges concur.