BOARD OF COUNTY COMMISSIONERS OF RICE COUNTY *vs.* CITIZENS' NATIONAL BANK OF FARIBAULT.

January 17, 1877.

**Constitution—Equality of Taxation.**—In the exposition of tax laws under our state constitution, which requires equality and uniformity in the imposition of taxes upon property, upon a cash valuation, such a construction must be adopted as will avoid duplicate taxation, unless a contrary interpretation is compelled by some express provision or necessary implication of the statute.

**Taxation—Banking-house of National Bank.**—Under Laws 1874, *c.* 1, the banking office and lot, lawfully owned and occupied as its place of business by a national bank created under the laws of congress, is not liable to assessment and taxation as real estate *eo nomine* against the bank.

In proceedings under the tax law of 1874, to enforce the payment of delinquent taxes in Rice county, the defendant interposed a defence to the tax assessed upon its banking-house in the city of Faribault, and returned as delinquent. In its answer the defendant averred that it was a national bank, organized under the act of congress; that the real estate in question consisted of land which was purchased, and a building thereon which was erected, with money forming part of defendant's capital stock, for its immediate accommodation in the transaction of its business; that such land and building thereupon became and are a part of the defendant's capital stock, included in the 800 shares into which such capital stock is divided; that all said shares were assessed and taxed, in 1874, to the holders thereof, at their full value in money, without deduction of the value of such real estate therefrom, and all the taxes as assessed on

such shares were duly and fully paid; and that the taxes in question, which were assessed in 1874 on the before-mentioned real estate, were assessed on property which had already been duly assessed and taxed at its par value, for the same year, and the taxes on which had been fully paid.

At the trial in the district court for Rice county, before *Lord*, J., it was agreed that the facts were as stated in the answer, and the court made a decision, *pro forma* sustaining the assessment and tax, and, upon defendant's request, certified the case to this court, under Laws 1874, *c.* 1, § 120.

*Gordon E. Cole*, for defendant.

*Geo. P. Wilson*, Attorney General, and *Geo. N. Baxter*, for plaintiff, cited *Van Allen* v. *Assessors*, 3 Wall. 583; *Bradley* v. *People*, 4 Wall. 459; *People* v. *Commissioners*, 4 Wall. 244; *Nat. Bank* v. *Commonwealth*, 9 Wall. 353; *Union Nat. Bank* v. *City of Chicago*, 3 Biss. 82; *Frazer* v. *Seibern*, 16 Ohio St. 614.

CORNELL, J.  Is real property, lawfully owned and used as a place for the transaction of its business by a bank created and existing under the national banking law, taxable *eo nomine* against the bank, under Laws 1874, *c.* 1, it being conceded that the specific provisions of that statute require the assessment and taxation of all the shares comprising the entire capital stock of the association in the name of the respective shareholders, and at their actual cash value, without any deduction on account of the real property so held by the bank, and in which a portion of its capital is invested? This is the sole question for consideration in this case, and its determination depends upon the character and effect of that statute.

The general policy of the law is to avoid duplicate taxation. No one subject of taxation ought to be required to contribute more than once to the same public burden, while other subjects of taxation, belonging to the same class, are required to contribute but once. In the exposition of any

tax law, therefore, a construction leading to any such result should be avoided, unless the cogency of some express provision or unavoidable implication of the statute compels its adoption. Says Judge Cooley, in his valuable treatise on the law of taxation: "It is a fundamental maxim in taxation that the same property shall not be subject to a double tax payable by the same party, either directly or indirectly; and, when it is once decided that any kind or class of property is liable to be taxed under one provision of the statute, it has been held to follow, as a legal conclusion, that the legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it may be taxed a second time." Cooley on Taxation, 165, and authorities cited in the notes. Especially should this rule obtain in the courts of a state whose constitution contains an express provision requiring equality and uniformity in the imposition of taxes upon property, according to a cash valuation.

The aggregate capital stock of any corporation is but the representative of its entire property, including the corporate franchise, and the actual cash value of the former depends wholly upon the productive character and real cash value of the latter. Intrinsically it possesses no value, and can have none, as separate and distinct from the corporate property it represents; nor is the property, character, or value of such stock increased, or in any way affected, by its division into a given number of shares, unless the proposition be conceded that all the parts are greater or less than the whole. Each share but represents a proportional interest in the corporate property, determined by the exact ratio existing between it and the entire stock, and it possesses a like corresponding value. Sever the connection between the stock and the shares comprising it, on the one hand, and the corporation and its property, on the other, and nothing remains to the former but a mere shadow, to which no real

property or commercial value can be imparted by any legislative device whatever. The authorities bearing upon these propositions are very fully collated and cited by Judge Cooley, in his work on taxation, pages 164 and 166, inclusive, and the notes appended thereto, although no authority would seem necessary to establish their correctness.

Any legislation, therefore, which requires, for the purpose of taxation, an *ad valorem* assessment of all the shares of stock in a bank, as property, without allowing any deduction on account of the value imparted to them as the representatives of the corporate property and franchise of the bank, and also a like assessment of the corporate property itself under its own proper designation, necessarily provides for double taxation, and, in order to give the statute under consideration that effect, it must clearly appear to have been intended by some express provision or necessary implication.

The law under consideration (Laws 1874, *c.* 1) contains specific provisions for listing and assessing the property of every incorporated and unincorporated company or association, (§ 28,) and of "every bank, whether of issue or deposit, (other than a national bank,)" and of "every banker, broker, or stock-jobber." § 29. It is not disputed that these specific provisions are so far exclusive in their character that other clauses of the statute, relating generally to the assessment and taxation of real and personal property, can have no application whatever to cases clearly falling within the purview of these sections, unless made applicable by express reference or necessary implication; and, that there might be no doubt as to the legislative intent, it is expressly declared that the taxation of banking corporations "is specifically provided for in this act." § 28. That the phrase, "banking corporations," as here used, is to be understood as including not only every corporate body doing a general banking business, whether under state or national authority, but also all property employed in bank-

ing, whether owned by corporations or individuals, is evident from the sections immediately following the one containing this declaration of legislative intent. Section 29 in terms relates to banks created under state authority, to private bankers, and to property employed in banking by both, while the exception from its provisions of national banks shows the latter to have been in the mind of the legislature while framing the provisions of the statute. Sections 30 to 34, inclusive, refer exclusively and particularly to these institutions, and their duties in respect to the matter of taxation; and no good reason is perceived why these provisions are not to be treated as covering the whole subject of taxation, as affects them, their property, or stockholders. It is made the duty of each national bank to furnish to the assessor a full and correct list of all its stockholders, with the number of shares held by each; and such shares are required to be assessed and taxed at the locality of the bank, upon their value, subject to the sole restriction that such taxation shall not be at a greater rate than is assessed upon other capital or property in the hands of individuals. This clearly indicates that such value is to be ascertained with reference to the actual amount and productive character of the entire corporate property and franchise, represented by the aggregate number of shares, and without any deduction on account of any portion of the capital of the corporation being invested in real estate, or property exempt from taxation. Full and adequate provision is also made for enforcing the payment of every such tax, through the instrumentality of the bank, upon which the duty is imposed to retain the amount out of the dividends due to the respective stockholders.

It is obvious from these provisions that the entire corporate property and franchises of these institutions are subjected to assessment and taxation once in respect to every public burden or matter of taxation. This is manifestly just, as respects both the state and the stockholders of the

associations, because all the actual property, represented both by the banks and the stockholders as such, is required to contribute its equal and proportionate share toward the support of the public burden, and no more. If, however, the real property of these associations is liable to assessment and taxation *eo nomine,* in addition to the tax upon the shares, it is quite clear that the banking capital or property represented by the national banks is subject to duplicate taxation to the extent of that so imposed directly upon the real estate. Moreover, it would violate the principle of equality as between the stockholders of different banks ; for it is obvious that a shareholder in a bank having a part of its capital invested in real estate would be subjected, directly and indirectly, to a greater amount of tax upon his investment than one holding stock of like value and amount in an institution owning no real property. A construction leading to such results is repugnant to all correct ideas of justice and equality. No such feature of duplicate taxation is found in any of the provisions of this statute relating to the taxation of other banking or corporate property. As respects the state banks, they are taxed only upon the valuation of their taxable property, which is required specifically to be listed for that purpose ; their shares of stock are not subject to taxation. As to the companies mentioned in section 28, as amended in 1875, (to cure an evident omission,) they are subjected to taxation upon the assessed value of their real and personal property, and also their capital stock, after deducting therefrom indebtedness for current expenses, and the value of such real and personal property. In view of these facts, the legislative intent not to require any assessment of the real property of the national banks *eo nomine,* as against the corporations, seems too plainly manifest to admit of any reasonable doubt. If such an assessment had been intended it would have been specifically provided for as in the case of

the state banks under section 29, and the other companies and associations referred to in section 28.

Reference was made, in the argument, to section 1 of the statute, as indicating an intention to require the assessment and taxation of all real estate *eo nomine.* The evident purpose of this section was to declare, in general terms, that all property, both real and personal, within the jurisdiction of the state, unless specially exempted, should be subject to taxation. It does not, however, require the listing and assessment of the property *in specie.* Its language is: " Such property, or the value thereof, shall be entered in the list of taxable property for that purpose, in the manner prescribed by this act." The mode and manner in which this is to be done is to be sought for, therefore, in the subsequent provisions of the statute. An assessment of corporate property, made by assessing its capital stock, or its shares of stock, upon a valuation fixed with reference to the actual value of the entire corporate property, would not be repugnant to anything contained in this section.

It is further objected, by respondent, that § 3, art. 9, of the constitution requires the legislature to pass laws " taxing all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and also all real and personal property, according to its true value in money ;" that this means the enactment of laws providing for the taxation of these items of property *in specie* or *eo nomine*, and, as it must be presumed that the legislature intended to conform to this constitutional requirement, the statute in question must receive a corresponding construction. This section must be construed in connection with sections 1 and 4 of the same article, and also in view of the condition of things existing at the time of the adoption of the constitution. Section 1 declares that " all taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation,

and be equalized and uniform throughout the state." Section 4 provides that "laws shall be passed for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects, or dues, of every description, of all banks and all bankers, so that all property employed in banking shall always be subject to a taxation equal to that imposed on the property of individuals." The leading and controlling purpose of these provisions was to subject all property, of every kind and nature, within the jurisdiction of the state, except such as is specially authorized to be exempted, to taxation upon a basis of a cash valuation, and to secure, so far as practicable, absolute equality and uniformity in the apportionment of taxes, so that every piece of property should bear its just and proportionate share of the public burden in the exact ratio of its cash value to that of the entire taxable property of the state. To this end section 3 is directed as specially applicable to all property not employed in banking, nor embraced within the purview of section 4.

Though a distinction seems to have been made between the kinds of property mentioned in section 3 and that referred to in section 4, it is obviously not one founded upon the idea of any discrimination to be exercised between them in the imposition of taxes; for the like rules of equality and cash valuation are clearly recognized as necessary to be observed as to each. It seems rather to have been the result of an abundance of caution, and an apprehension on the part of the framers of that instrument that the banking capital of the state might possibly, through the oversight or inadvertence of the legislature, escape its just and equal share of taxation, unless guarded against by some specific provision particularly directing the attention of the law-making power to the subject. To this end section 4 makes it the special duty of the legislature to provide by law for the taxation of all property, of every description, of all banks and of all bankers, " so that all property employed in banking shall always be subject to a taxation equal to

that imposed on the property of individuals." The subjection of all such property to equal taxation, upon a like basis with all other property, is the sole and declared purpose of the section. The mode and manner of accomplishing this, so that these rules are observed and the end attained, are matters left entirely to legislative discretion. It may be done, as to state banks, by taxing, upon a cash valuation, and in the name of each, all its taxable property *eo nomine*, either in the aggregate or in detail; or its entire capital, in case none of it is invested in property exempt from taxation; or—what would be equivalent thereto—by taxing all its shares of stock against and in the name of the shareholders, upon a like *ad valorem* assessment. Either of these modes would accomplish the result aimed at by the constitution; but the imposition of the same tax upon both the capital and the property in which it is invested, or upon either and the shares representing it, would violate the cardinal principle of equality in taxation, which constitutes its distinguishing feature.

As to national banks, they were unknown at the time of the adoption of the constitution. They have been brought into existence since, under federal authority, partly to serve the purpose of the national government, as convenient fiscal agents, and partly to promote the same ends, and accomplish the same objects, intended to be subserved by the state banks. In this latter character they have nearly succeeded in replacing all the state institutions, and in absorbing the entire banking capital and business of the country, so that they represent, in fact, the principal property interests which were intended to be affected by § 4, art. 9, of the constitution, and to this extent they fall within the spirit, though not perhaps the letter, of its provisions. Inasmuch, however, as the agencies created and established by the federal government, to assist in the execution of its powers, are exempt from state taxation save as allowed by congress, the state can only exercise its taxing powers over the national banks, and the capital they employ and repre-

sent, in the manner and to the extent permitted by congressional authority. Under this authority it is permitted to the state to tax the real property of the banks as such, and also all the shares of stock, as personal property belonging to the shareholders, provided the rate of valuation and assessment of the latter is no greater than is assessed upon other moneyed capital in the hands of individuals. Within the limits of this authority the state may fully exercise its taxing powers, in strict obedience, however, to the requirements of its own constitution.

As equality in taxation is the constitutional policy of this state, no scheme of taxation can be presumed to have been intended by the legislature, which necessarily involves, in its practical results, the imposition of a greater proportionate share of its burdens upon moneyed capital, invested in the business of banking under national laws, than is imposed upon capital similarly employed under state authority. The law under consideration provides for the assessment of the real property of the state banks *eo nomine,* but does not authorize its assessment in any other form. Capital thus invested is, therefore, subjected to taxation but once for any one object. If a like mode of assessment had been intended in respect to the real property of the national banks, it must be presumed that some provision would have been made for deducting the value of such property from the total value of the shares, in order to fix upon a correct valuation of the latter for the purpose of taxation. The omission of any such provision was manifestly intentional, as the shares are required to be assessed at their true and full value, without any deduction whatever; and in this way the real property belonging to these associations is always subjected to its proper share of taxation.

The decision of the district court, sustaining the assessment and tax in question, is reversed, and judgment ordered in accordance with the prayer contained in the answer of the bank.