SARAH B. LAMAR, APPELLANT, VS. JOSEPH PALMER, COL-
LECTOR OF REVENUE, APPELLEE.

1. The owner of promissory notes or other credits, whether secured by mortgage or not so secured, is liable to be taxed upon the value of such credits.

2. A tax upon notes or obligations secured by mortgage upon land, the land mortgaged also being taxed, does not present a case of double or unequal taxation.

3. "Debts due from solvent debtors," taxable by the terms of the statute, refers not to the general solvency of the debtor, but to the amount of the debt which may be realized or collected; i. e., the value of the debts.

Appeal from the Circuit Court for Jefferson county.

The appellee, as Collector of Revenue of Jefferson county, levied upon and advertised for sale lands of the appellant to collect the taxes. The bill alleged that the sale would cloud the title to the lands.

The other facts are stated in the opinion.

*T. L. Clarke* for Appellant.

*White & Henderson* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

Appellant filed her bill in equity and prayed an injunction restraining the sale of her property to satisfy a tax levied against her as the owner of certain promissory notes given for the purchase of land, and secured by mortgage upon the land. The notes and mortgate purport to secure the sum of $50,000. They are assessed at the value of $25,000,

that being the estimated cash value of the notes, and the tax is computed upon that sum. Beyond the mortgage she has no security, and the mortgagor is insolvent. The taxes assessed against the land have been paid by the owner.

It is claimed by the bill that complainant is not liable to be taxed upon the notes or the money thereby secured; that they are not property inseparable from the security, and the security, i. e. the land, was assessed and taxed, and this tax has been paid; and upon the further ground that the notes do not constitute a debt owed by a "solvent debtor." The defendant demurred to the bill for want of equity, and the chancellor sustained the demurrer and dismissed the bill.

Complainant appeals and prays a reversal upon several grounds of error set out in her petition.

The constitutional provision touching the principal question involved is found in Sec. 1, Art. XII.:

"The Legislature shall provide for a uniform and equal rate of taxation, and shall provide such regulations as shall secure a just valuation of all property, both real and personal."

Excepting such as may be exempted for certain purposes.

Section 3 of Chapter 3099, Laws of 1879, says "the term personal property  *  *  shall be construed to include all goods and chattels, money and effects,  *  *  all debts due or to become due from solvent debtors, whether on account, contract, note, mortgage or otherwise," &c.

The Constitution contains no limitation as to the objects of taxation, or the character or quality of the property or things which may be made to contribute to the support of the government, and there is, therefore, no limitation upon the power of the Legislature in that respect. The argument of the appellant is that the principle of equality and uniformity is violated by taxing the land upon its value,

and again taxing the interest of the mortgage creditor in the same land, which it is claimed is double taxation.

This proposition might have force if it were true in point of fact. The land is assessed and taxed at its estimated value. The holder of the notes is taxed, not upon an interest in land, but as the owner of so much money at use ; that he had security upon real estate for the ultimate payment of the money only gives additional value to the notes, and value gives to the notes the character of property. The land is productive, and has value for that as well as other reasons, and its value is estimated for the purposes of taxation with reference to its usefulness and the income that may be derived from it. The owner may pay the notes and keep the land, according as he has success in getting and saving money ; the property, therefore, in the land and the property in the notes are not the same property or value. The notes may be equally valuable, independent of the mortgage security ; other security or pledges may exist ; or the maker being solvent the notes may be collectable without other security. Can it be well insisted that the holder of a note is liable to be assessed and taxed upon its cash value when he holds no collateral security ; but if he holds security by mortgage on land which is taxable his money escapes taxation by reason of the security and the practical certainty that it will be paid ? The owner of money is liable to be taxed upon it (except such as may be exempt by the laws of the United States) even when it is locked in his chest and is producing no income. Why should it be exempted from taxation if loaned at interest and secured by mortgage upon taxable property and yielding an income ?

The appellant relies mainly upon the argument contained in the opinion of the Supreme Court of California in the People vs. The Hibernia Savings Bank, 51 Cal. R., 243.

The doctrine of that decision was directly opposed to the previous uniform ruling of the same court by other Judges. It had been decided uniformly that promissory notes and other credits were property, and as property liable to be taxed at their value. 34 Cal. R., 433; 35 id., 677; 37 id., 54; 38 id., 461; 43 id., 590; 46 id., 417, and other cases.

In the Hibernia Bank case (51 Cal., 243,) the court holds that credits (secured or unsecured) are not property, within the meaning of the Constitution of that State, for the purposes of taxation; that the creation of debts does not add to the aggregate property of the State; that actual tangible property is the basis of the value of credits, and the payment of all the debts owing in the State and the extinction of all promises to pay money would not diminish the aggregate value of property; that the property, which is the basis of all credit, is taxed, and a tax upon the credit is simply an additional tax upon the same value, payable out of the taxed property.

The conclusion of the court was that the taxation of credits was not warranted by the Constitution, whether such credits were secured or unsecured.

That decision was not only contrary to every prior utterance of that court, but against the established rule of law elsewhere prevailing, as well as against the universal legislation of the country.

Burroughs on Taxation, at p. 59, makes this rather irreverent commentary upon the decision: " If this be true, then the vast sums loaned in this country and secured by mortgage, the negotiable paper of the country, the bonds of municipalities, of States and of the United States, all of these securities are not property, they are mere evidences of debt. We venture to affirm that the idea that these evidences of debt are not property in the legal acceptation of that term never before entered the brain of a lawyer. Ac-

cording to this rule an acre of land in some remote part of the State not worth five dollars is property, but a debt of $20,000 secured upon real estate in San Francisco worth $100,000, yielding an annual income of $1,600, is not property, and the framer of the Constitution intended that the owner of the acre of land should contribute to the support of the State, but not the owner of the mortgage."

We incline to think that Mr. Burroughs mistakes the position of the California court when he says that they held that such evidences of debt were "not property." For the court say that "in a certain sense a promissory note, or any credit, is property" when it has value, and "in any case a credit has no value other than the value it has acquired by reason of the probability that the property, having present actual value upon which a tax is levied and collected, will be applied to the satisfaction of the claim it represents. He who has the property in possession must be taxed on its value, and the value once taxed cannot be re-taxed without a violation of the constitutional provision that each value shall be taxed proportionately to the sum of all the values."

This is the gist of the ruling of the majority of the court in that case.

As to the mortgage, or in case of a sale of land on credit without mortgage, the holder of the notes for purchase money, it is settled in several States that the taxation of the credits as his property is not double taxation. Burroughs on Tax., 57 ; People vs. Rhodes, 15 Ill., 304 ; State vs. Manchester, 1 Dutch., 531 ; People vs. Whartenby, 38 Cal., 461 ; State vs. Williamson, 33 N. J. L., 77.

And a note given for the purchase money of land, secured by mortgage, comes within the description of money at interest. Hammersly vs. Franey, 39 Conn., 176 ; State vs. Manchester, 1 Dutch., 531 ; State vs. Massaker, 2 id., 564.

Cooley on Taxation, p. 6, cites from the author of " Wealth of Nations " the following, among other maxims, relating to taxation :

" 1. That the subjects of every State ought to contribute to the support of the government as nearly as possible *in proportion to the revenue which they respectively enjoy* under its protection."

Judge Cooley observes, p. 8 : " Of these maxims, the wisdom of which has secured for them universal acceptance, * * the first and third address themselves to the Legislature which frames the revenue laws."

" There is nothing poetical about tax laws. Wherever they find property they claim a contribution for its protection, without any special respect to the owner or his occupation." 32 Pa. St., 381.

In Phil. Sav. Fund vs. Yard, 9 Pa. St., 361, the court gives this example: " Where A. borrows money on mortgage and loans it to C. on bond, who loans a part of it to D., it is taxed in the current of each actual employment. In the complexity and involutions of business a dollar is employed many times in a day, and in each actual employment represents the property, business or the person of him who uses it. And in cases of this kind it is the usufruct and not the actual or identical money that is taxed." And in Augusta Bank vs. Augusta, 36 Me., 259, Shepley, Ch. J., says : " Thus stock in trade may be taxed to the owner, while he may be indebted for it to many persons who may be taxed for those debts, or the money loaned to purchase it. Real estate may be taxed to a mortgagor in possession while the mortgage is taxed for the money secured by the mortgage. * * So imperfect are all human institutions that perfect equality in the imposition of burdens is not to be expected. These provisions for valuation are not considered to be in conflict with the general purpose to have all

property subjected to taxation once, and only once at the same time."

In Ala. Gold Life Ins. Co. vs. Lott, 54 Ala., 499, the court, Manning, J., says: "It may be that by some subtle process all the taxes that are charged against the lender of money or seller of property for the amount which the borrowers or purchasers owe him therefor, as 'solvent credits,' get back and fasten themselves upon their property; and it may perhaps be true that the highest public interests would be promoted by assessing all taxes upon the real estate of a country."  *   *   *

"So long as the tangible property of the country is actually distributed among the people, and one man is indebted to another among them, and so long as incomes are received by the creditor class from their credits, as well as by the property-holders from their property, it will not be possible to convince the latter, even (perhaps we should say especially) the debtors of that class, that it would be either just or expedient to tax the property from which their incomes are derived, and not the credits from which the incomes of the creditors are derived. It should be remembered that taxes, being regarded as the contributions of the people for the support of the State, must be assessed on such subjects of taxation as the people, by their representatives, choose to designate; and they have chosen, during the whole period of our history, to say that credits, or the moneys that the creditor class have out at interest, shall be subject to taxation as well as the tangible property which, by the employment of labor and skill, is made to return valuable products for its owners." The same court, referring to the case of the Hibernia Bank, (51 Cal., before cited,) declines to put the same construction on the provision of the Constitution in respect to equality and uniformity of taxation as that held by the California court in that case, and holds

that in the absence of plain constitutional restrictions, it rests within the wisdom of the Legislature to determine the subjects of taxation, and that there being nothing in the Constitution of Alabama (which is like that of California, and also of Florida in that regard,) which forbids the taxation of credits secured by mortgage on property which is also taxed, the legislative act expressly subjecting them to taxation is valid.

From the time of the organization of local government in Florida the Legislature has insisted upon levying taxes upon money loaned and money at interest. It has been deemed just that those who have money at interest should, equally with those who were taxed for the possession of tangible real or personal property, pay taxes for the protection they received at the hands of government; and especially is it equitable that those whose income from money at interest is secure and certain should pay taxes according to the value of their investment, while the owner of lands and other property is obliged to pay taxes upon the value of his property, although he may be embarrassed with debts and his income precarious. With this legislation upon the statute books, declaring solvent credits to be property liable to taxation, the present Constitution of the State was adopted. Its requirement that all real and personal property (except churches, &c.,) should be assessed and taxed includes everything then known as taxable property. The legislation subsequent to the adoption of the Constitution, declaring that the term personal property should be construed to include money due, or to become due, " on account, contract, note, mortgage or otherwise," was in harmony with the laws existing when the Constitution was adopted, and is not in conflict with any of its provisions.

Appellant makes the point that by the statute " debts

due or to become due from *solvent debtors* " are taxable, but that according to the allegations in this bill the mortgagor here is not a " solvent debtor;" that he has no property except the land mortgaged, which is worth only half the amount due upon it, and he is utterly insolvent. And so it is claimed the money due upon these notes, or any part of it, is not liable to taxation by the terms of the act. The notes and mortgage call for $50,000 or more.

The Assessor and the County Commissioners have estimated that the value of the debt secured by the mortgage is about $25,000, and the tax is imposed upon that sum as the valuation. It is evident that the Legislature intended to assess all credits at their actual value, to-wit: the amount of money certain to be realized upon them. By the use of the words " due from solvent debtors " it was undoubtedly intended to include and mean so much as the debtor or his property would be able to pay. To that extent a debtor is solvent—good for so much money. If a debtor owes ten thousand dollars and his property and means marshal at nine thousand nine hundred, he is " insolvent." But was it intended that the creditor should escape taxation upon the ninety-nine hundred because his debtor was thus insolvent, and because he could derive no income from the $100 ? A debtor is solvent to the extent that he can pay, though insolvent as to what he cannot pay. This is the sense in which the phrase " solvent debtors " is used in the revenue law.

It may be there is hardship in the case—it may be the complainant may purchase the land to satisfy her mortgage claim, but the presumption is the land will sell for what it is worth (if she chooses to foreclose and sell), and that a purchaser will pay the money. In that case she will encounter no hardship, but will pay taxes upon what she actually has in good money.

We are satisfied that the rule which has heretofore universally prevailed, (notwithstanding the recent construction given by the California court to the Constitution of that State,) is just and equitable, and that it should not be changed or waived in a given case because a hardship may result to her on account of the misfortune of her debtor by its enforcement.

The decree of the chancellor is affirmed.