State of Minnesota *vs.* Rufus R. Rand and another.

December 18, 1888.

**Taxes — Personal Property — Credits — Contract for Sale of Land — Double Taxation.**—Four persons entered into a written agreement with a corporation to sell and convey to it certain described real estate for a sum named, of which a small portion was paid down. The corporation agreed in the same writing to pay the balance of the purchase price upon certain specified days, with interest payable annually, and was given possession of the property. It also agreed to pay the taxes assessed against said property. *Held,* that the debt thus arising from the corporation purchaser was an assessable credit, under the constitution and revenue laws of the state of Minnesota.

**Same — Assessment—Credits owned in Common.**—The persons named in said agreement having failed to list the said credit for taxation, the assessor, as required by Gen. St. 1878, c. 11, § 36, listed the same for its full amount against the four persons whose names were mentioned in the agreement. Upon a refusal to pay the taxes assessed and levied upon this credit, a citation of the district court was issued, directed to the four persons named, only two of whom were served. These appeared separately, and answered, setting up the facts. Upon trial of these facts the court ordered, and judgment was entered, against the two who were cited, and who alone appeared, for the full amount of the taxes levied upon the credit. *Held,* that the listing and assessment in this form was irregular, and the judgment based thereon erroneous.

Appeal by defendants (impleaded with A. T. and L. S. Rand) from a judgment of the district court for Hennepin county, where the cause was tried by *Young*, J., without a jury.

*Jackson, Atwater & Hill*, for appellants.

*F. F. Davis* and *J. C. Worrall*, for respondent.

COLLINS, J. Citation issued by the district court for Hennepin county, addressed to A. T. Rand, L. S. Rand, Rufus R. Rand, and Kate Rand, requiring them to show cause why they should not pay certain taxes assessed against them for the year 1886, but remaining wholly unpaid. The citation was not served upon A. T. and L. S. Rand. Rufus R. and Kate Rand answered, alleging—*First*. That each had duly returned for assessment a list of personal property; that each had been duly taxed therefor, and had paid the amount of said taxes as by law required. *Second*. That the tax claimed in the citation had been unlawfully assessed against defendants, on account of certain facts quite fully set forth, but which may be stated briefly as follows: The four persons named in the citation were the heirs-at-law of one Mary C. Rand, deceased, whose estate was being probated in said Hennepin county, and who died seized of certain real property in said county; that as such heirs the defendants, on February 13, 1886, entered into a written contract, (a copy of which was made a part of the answer,) whereby they sold, and upon payment of the purchase price agreed to convey, to the "Minneapolis Club," a corporation, the real property before mentioned, and that the tax referred to in the citation was that improperly assessed against said heirs, for and on account of the said contract with the club, as a credit belonging to said defendant heirs upon which they should pay taxes. From an inspection of the contract of sale it appears that it is in the common form, the defendant heirs giving immediate possession, and agreeing to convey by warranty deed upon being paid $2,500 cash in hand, which was acknowledged, $2,500, May 1, 1886, (which had been paid when the assessment was made,) and $5,000, May 1, 1887. The purchaser covenanted and agreed to make the above-mentioned payments, and the further sum of $40,000, on or before May 1, 1897, with interest at 6 per cent., payable semi-annually; to pay all assessments and taxes which might be levied or imposed upon

the property after May 1, 1886; and in case the vendors should convey upon the payment of $10,000, to execute and deliver a mortgage upon the property to secure the balance of the purchase price. The state contends that if these deferred payments are a credit subject to assessment, the assessor's method of procedure is justified by Gen. St. 1878, c. 11, § 38. We assume this to be so, as counsel for appellants is silent upon the proposition, and the section cited seems to sustain the position of the state.

The next question is whether the item listed by the assessor upon his own motion is a credit within the meaning of the constitution and the tax laws of this state. Section 3, art. 9, of the constitution provides that "laws shall be passed taxing all moneys, credits, investments in bonds," etc. In obedience to this constitutional mandate the legislature has provided, through section 3 and the 23d subdivision of section 16, chapter 11, aforesaid, for the listing and assessment of that class of personalty ordinarily denominated as "credits." If this be one, it is taxable, and those to whom it is payable must bear the burden which the framers of the constitution declared should be laid upon its species. The objections to this manner of creating revenue have often been stated by political economists, but no one now questions the abstract right of the people to exact, through their properly constituted representatives, tribute in this form for governmental purposes. The right so to do is not disputed here, but it is contended that the amount due appellants upon the contract of sale is not a credit; that the contract is wholly conditional, differing from the absolute obligation to pay evidenced by note; that it cannot be sold or assigned, and could not be collected except upon tender of a willingness, coupled with an ability, to convey; and that it is not certain, as no decree of distribution of the estate has been made, that they ever will be seized of the property mentioned in their contract, and thus able to perform. They sum up the many objections by asserting that, as they have no more property than was theirs the day before the contract was made, it results in double taxation. By means of section 4, chapter 11, supra, we are informed that " the term 'credits,' wherever used in this act, shall be held to mean and include every claim and demand for money or other valuable thing, and every an-

nuity or sum of money receivable at stated periods, due or to become due, and all claims and demands secured by deed or mortgage, due or to become due." Credits, in an act making them subject to taxation, (essentially the same as ours, including section 18, relative to deductions for debt,) are defined to be "the excess of the sum of all legal claims and demands, whether for money or other valuable thing, * * * due or to become due to the person liable to pay taxes thereon, * * * when added together, (estimating every such claim or demand at its true value in money,) over and above the sum of all legal *bona fide* debts owing by such person." *Payne* v. *Watterson*, 37 Ohio St. 121. The query seems to be a simple one. If the appellants and their codefendants have a claim or demand for money, or there is a sum of money due or to become due from the corporation named in the contract, secured or unsecured, the broad and comprehensive wording of the statute includes it, and it was the duty of each defendant (assuming all to be residents of the city in which the taxation was attempted) to list his or her interest with the assessor. Upon a failure to do so, the assessor but performs his sworn duty when he properly returns the omitted items. The intent of the lawmakers to reach the creditor class is apparent, and while the practical working of a statute so sweeping and unmistakable in its terms may remind us that, as was said in *Finley* v. *City of Philadelphia*, 32 Pa. St. 381, "there is nothing very poetic about tax laws," it will remain difficult, probably impossible, to convince the debtor class, with tangible real and personal property, from which it secures an income, that it should be taxed, while credits, from which the creditor class derives its income, should wholly escape the burden of taxation.

In the case at bar it will be observed that no notes were executed by the purchaser, nor did the vendors enter into a bond for a deed. The contract contains the bargain; the corporation covenanting absolutely, in words, upon its part to pay upon days certain, and the vendors in equally as formal and binding a manner agreeing to convey the premises upon receiving a part only of the purchase price. There were but two things which could possibly prevent the vendors from receiving their money: *First,* their own inability to give a perfect title to the premises; and, *second,* the insolvency of the vendee.

We must assume the solvency of the latter, and with equal confidence must presume that the vendors will be able to convey when the time comes, in accordance with their contract. We then have the written promise of the purchaser to pay and the agreement of these defendants to deed. Either or both can be enforced as readily as if promissory notes evidenced the pecuniary liability of the one party, and a bond the accountability of the other. The obligation of the one to make the promised payments, and of the other to execute and deliver a conveyance, are definite and conclusive. It is true that the writing, of itself, lacks the elements of negotiability. But the interests of each party, therein specifically fixed, are capable of transfer. Besides, the application of the tax law to the claim or demand it is designed to reach depends not upon the negotiable or transferable qualities of such claim or demand, but upon its character. In construing a statute which makes every claim, demand for money, every security, or sum of money receivable at stated periods, due or to become due, subject to assessment at its true value, we are unable to distinguish between an executory agreement in this form and one which is more formal, simply because it is evidenced by a bond for a deed and promissory notes. Had this contract been so shaped, its force and effect, the rights and remedies of the respective parties, would have been the same, while the amount of the deferred payments would be taxable as credits, beyond a doubt. *People* v. *Rhodes*, 15 Ill. 304; *People* v. *Worthington*, 21 Ill. 171. Again, this instrument amounts to a sale of the premises, if fairly construed. *Meyer* v. *County of Dubuque*, 49 Iowa, 193. The parties evidently so treated it. While the heirs had not been awarded the premises in form, they gave immediate possession to the purchaser, and a deed was to be executed upon payment of one-fifth of the price. The legal title remained in the vendors, but the equitable title passed to the vendee. Specific performance could have been compelled in case of a refusal to convey. Time was nowhere made of the essence of the contract, while, in case of default on the part of the club to pay as stipulated, its forfeiture and determination, the right to retain the money paid and to re-enter the premises, rested and was optional with the vendors. If, then, the realty was in fact sold, no matter what form

may have been adopted to evidence the bargain, there must remain a claim and demand for money against the vendee, so long as the purchase price is not wholly paid.    While considering the assessability of the sum named in the instrument, its character may be tested in many ways.    The paper undoubtedly possesses value as an evidence of debt, nor is there a question but that the sum which the club has positively promised to pay for the premises could of itself be attached or seized by proper process, or reached in supplemental or insolvency proceedings.    Should the vendors die, it would pass to their legal representatives as personal estate, being inventoried at its true value in money, taking into consideration the financial ability of the corporation vendee, and, as security only, the value of the unconveyed real estate.    Again, by virtue of section 18, chapter 11, *supra,* the corporation to whom this sale was made would be entitled to deduct from the gross amount of its credits—as a *bona fide* indebtedness—such sum as it may owe upon the contract.    If such sum be the debt of the club, it must be a credit in the hands of those to whom it is owing.    We also find that it possesses another important element of property, of the "credits" which were contemplated by the legislators when adopting the tax laws.    Through its creation there is secured to the vendors quite a revenue in the shape of interest, to be paid annually by the purchaser of the property, which fact further testifies to the real character, and assists in determining whether or not the owners of such an obligation should contribute to governmental support "in proportion to the revenue which they respectively enjoy under the protection of the state."

But the appellants insist that by this means they are doubly taxed : first, upon the realty mentioned in the contract; and again upon the sum of money therein promised by the Minneapolis Club.    The field for discussion which may be gone into when duplicate taxation is claimed, is great, for it has been the subject of much contention among the political economists, as well as in the courts.    The views of the latter have been quite uniform, and it will serve our purpose to call attention to *Lamar* v. *Palmer,* 18 Fla. 147; *State* v. *Carson Savings Bank,* 17 Nev. 146; *Toll Bridge Co.* v. *Osborn,* 35 Conn. 7; *State* v. *Collectors,* 25 N. J. Law, 315; *Buchanan* v. *County Com'rs,* 47

Md. 286; *People* v. *Village of Ogdensburgh*, 48 N. Y. 390; *St. Louis Mut. Life Ins. Co.* v. *Board of Assessors*, 56 Mo. 503; *Alabama Gold Life Ins. Co.* v. *Lott*, 54 Ala. 499; *Catlin* v. *Hull*, 21 Vt. 152,—each of which will be found interesting and instructive. See, also, Cooley, Tax'n, (2d Ed.) §§ 28, 158; Burroughs, Tax'n, § 49. In several of the foregoing cases the litigation grew out of the attempted taxation of mortgages, either as "credits" or as "property." In some of the states in which these cases originated, "credits" are not, in words, made taxable by the constitution, as is the fact in Minnesota. But the general current of authority is that all solvent credits, secured or unsecured, are property, and that, by so assessing them, double or duplicate taxation does not necessarily result. One notable and much criticised exception to the rule that secured credits are property is *People* v. *Hibernia Bank*, 51 Cal. 243, in which the court held —expressly overruling two prior decisions—that mortgages, although credits, are not property, and hence not assessable as such. Attention has been called to a Kansas case, *Brown* v. *Thomas*, 37 Kan. 282, (15 Pac. Rep. 211,) in which parties entered into a contract much resembling the one here, and set out in full in the opinion. The court held that no debt was created, (upon the assumption that the privilege of purchasing the estate was optional simply,) but, if there was, it was secured upon realty, and therefore expressly excepted from taxation, by statute.

Recurring now to appellants' claim of duplicate taxation, it is stated in Cooley, Tax'n, (2d Ed.) 220: "There is also sometimes what seems to be a double taxation of the same property to two individuals, as where the purchaser of property on credit is taxed on its full value, while the seller is taxed to the same amount on the debt." While the learned writer seems to deplore the law which permits such unequal results, he admits that such taxation is not invalid; but there is a sense, he says, (page 225,) in which duplicate taxation may be understood "which would render it wholly inadmissible under any constitution requiring equality and uniformity in taxation. By duplicate taxation in this sense is understood the requirement that one person or any one subject of taxation shall directly contribute twice to the same burden, while other subjects of taxation belonging to the

same class are required to contribute but once." In *Nashua Savings Bank* v. *City of Nashua,* 46 N. H. 389, it is laid down as a fundamental principle in taxation that the same property shall not be subject to a double tax, payable by the same party, either directly or indirectly. The same statement of the law, couched in different language, may be found in *Com'rs of Rice Co.* v. *Citizens' Nat. Bank,* 23 Minn. 280. It is obvious from the foregoing that objectionable duplicate taxation is not imminent in this case. It is possible that the purchaser may default in its promise to pay for the property, as well as in its covenant to pay the taxes upon the same for the year 1886, but this cannot be assumed. If there is no default, the taxes upon the real estate for the year involved in these proceedings—1886 —will be paid by the corporation purchaser. The vendors will suffer no hardship, but simply pay taxes upon what they actually have in property, in return for the protection which they and it receive at the hands of the government. The contingency which is urged, that they may have to pay upon both credit and real property for the same year, is too remote for serious consideration. If it be available in this instance it is equally so in all cases where real estate security is accepted by one who loans money or sells such property upon time. There is a possibility of a failure to pay the debt so secured, and that taxes may be allowed to accumulate in both cases, but this is not necessarily the result of the transaction.

But an objection is made to the judgment, (which is against the appellants alone, for the full amount of the tax levied on a credit owned by four persons,) which seems to us insurmountable, although respondent claims such a judgment to be warranted, upon the authority of *Meyer* v. *County of Dubuque, supra.* The case cited does not go to the extent claimed, for the assessment and proceedings were all against one person; no part thereof was against others, as in this case. We are not advised as to the manner pointed out by the Iowa statute for listing personal property held in common, as was the credit now being considered. In Minnesota there is no method of listing in such cases expressly provided, but for many reasons each owner should list and return his share or interest of such a credit for taxation, and, if he fails so to do, the assessor may

list for him, safely presuming, in the absence of testimony to the contrary, that the interests of the tenants are equal. One of the reasons for requiring each owner to make return is that, by implication at least, the tax laws (sections 7 and 15, chapter 11, *supra*) seem to contemplate it; another, that each person should be permitted to pay the amount of tax due upon his share of the credit, without reference to the others; another, that each is entitled to have the amount of his *bona fide* indebtedness deducted from the assessable value of his interest in the credit; and another, that the *situs* of this class of personal property for the purposes of taxation is in the county, town, or district where the owner resides. Section 8, chapter 11, *supra*. Frequently, we apprehend, the owners might reside in different taxing districts, in which case the law fixes the place for each. It being obligatory upon each of the persons named in the contract to list with the proper assessor his or her interest therein, a failure so to do cast the duty upon the assessor, who should have listed precisely in the form and manner required of those for whom the law compelled him to act. The officer listed the property as a whole, against all whose names appeared as owners, seemingly having in mind the method of assessing real estate when held in common, but overlooking the fact that the assessment of personalty is a proceeding designed to reach the person ultimately, while the assessment of real property is a proceeding against the land itself. Had the listing and assessment been in proper form, these appellants could not escape paying their share of the total tax under the citation. As it is, the judgment is reversed.

GILFILLAN, C. J. I concur in the result reached, but dissent from so much of the opinion as holds that the contract by the Rands to convey, and of the club to pay or secure the price upon such conveyance, while it remained executory, constituted a credit, within the meaning of the statute requiring credits to be listed or assessed for taxation.