·[No. 4917.]

THE PEOPLE OF THE STATE OF CALIFORNIA *v.* THE HIBERNIA SAVINGS AND LOAN SOCIETY.

PROPERTY LIABLE TO TAXATION.—Credits are not property in the sense in which the word property is used in section thirteen of Article XI of the Constitution, and cannot be assessed for taxes, or taxed as property, even if secured by mortgage.

APPEAL from the District Court, Third Judicial District, City and County of San Francisco.

The defendant was a corporation engaged in the business of receiving deposits in money, and loaning out the same for the benefit of the depositors after the payment of expenses. Its loans were secured by mortgage. Between the first Monday in March and the first Monday in June, 1874, it was assessed for solvent debts, secured by mortgage, in the sum of $11,366,934.59. The tax levied on this sum was $77,460.48. The solvent debts were secured by mortgages which were a lien on real estate situated within the State of California, which real estate was assessed at its full value for the tax of the year 1874, without any deduction for the mortgage debt, and the taxes so assessed were paid

This was an action commenced to recover the tax upon the refusal of the defendant to pay it. The court below rendered judgment for the plaintiff, and the defendant appealed.

The other facts are stated in the opinion.

*John B. Felton,* for the Appellant.

*S. F. Leib*, also for the Appellant.

In taxing a solvent debt, what is taxed? Not the debt, for if a debt has no value (that is, no solvency) it is not taxable. The Constitution provides that property must be taxed "in proportion to its value;" value, therefore, is a prerequisite to taxation.

If, then, a debt is not of itself taxable, and a solvent debt is taxable, it necessarily follows that it is the solvency that is taxed.

What is a debt's solvency? It is the necessary amount of property belonging to the debtor which he has actually or potentially, with which he must, voluntarily or by compulsion of the law, pay the debt. If this property is assessed at its full value directly to the owner (the debtor), and is again assessed to the creditor in the shape of the solvency of a debt, it is clear that, to the extent of the amount of the debt, it is twice assessed.

*W. C. Burnett and Creed Haymond*, for the Respondent.

By the Court, McKINSTRY, J.:

"Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law; but assessors and collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which the property taxed for State, county or town purposes is situated." (Constitution of California, Article IX, section 13.)

There is no provision in the Political Code which requires, in terms, that debts secured by mortgage shall be taxed. That Code requires that all property shall be taxed, and section seventeen declares: "The words 'personal property' include money, goods, chattels, *evidence of debt, and* '*things in action.*'"

Unless the provision of the Constitution above quoted restrains or limits the power of the Legislature, so as to prohibit the taxation of "evidences of debt and things in action," it is the duty of the assessors to assess not only

mortgages, but all debts "solvent" or not solvent, and also all rights of action, whether arising *ex contractu* or *ex delicto*.

And this, 1st, because it is the established law that *all* property must be taxed, and the Legislature has no power to exempt any property; and 2d, because the Legislature has declared that all property shall be taxed, and attempted to include in the definition of property all *choses in action.*

But to declare that it is the duty of the assessor to assess all "things in action," is to give a construction to the Constitution which must lead to the grossest absurdities. The Constitution, in its application to the various departments of the Government, and to individual rights, must receive such a construction as to give it a practical operation. There would be a contradiction in the single section of the Constitution, if it were construed as requiring that *all* property should be taxed equally and uniformly with reference to its value, and that the word property includes those things practically incapable of an appraisement bearing any definite relation or proportion to other things or property.

That causes of action are dependent on too many contingencies to be capable of appraisement which shall accord with any rule of equality or uniformity of value, is too plain for argument.

Yet the Constitution requires that all property shall be assessed on the *ad valorem* principle by local assessors. All property which is visible and tangible is capable of such assessment; choses in action are not. The word "property" has been used in our language in several senses; but in the case in hand we cannot be limited to the meaning given it by the Code, but may also—and such is our duty— look for its meaning in the Constitution. The Constitution provides that no property, as property, shall be taxed except such as is capable of a valuation by the assessors, which shall be ratably equal and uniform with that affixed to all other property.

In *Houghton* v. *Austin* (47 Cal. 661), it was held that taxation must be thus equal and uniform; and in *People* v. *San*

*Francisco Savings Union* (31 Cal. 138), that a valuation by an assessor is the very foundation of proceedings for apportioning and collecting a tax on property.

The thirteenth section of Article XI of the Constitution requires that each article of property, capable of valuation, shall be fixed or estimated, and the owner thereof made to pay a sum, which shall bear the same proportion to the whole amount levied as does the value of the particular property to the aggregate value of all the property in the State or tax district.

Under our Constitution, therefore, the subject of taxation is the sum of all the values.

Independent of other constitutional restrictions the State might take such portions of the wealth within its borders—the burden being distributed with uniformity—as the legislative department might deem necessary for the support or defense of the Government. In this respect there would be no limitation, save that resulting from moral considerations, addressing themselves to the consciences of individual legislators. Supposing — what would thus be possible in theory—that the necessities of Government required a tax of one hundred per cent. on all values; or, what would be the result of such a tax, an appropriation of all the property in the State, it is plain that the State would receive no benefit from evidences of debt due by some of her citizens to others, and payable out of the tangible property which the State had already taken.

It is property in possession or enjoyment, and not merely in right, which must ultimately pay every tax.

The Legislature may declare that a cause of action shall be taxed, but a cause of action cannot pay the tax; and this because it has, and can have, no value independent of the tangible wealth out of which it may be satisfied.

In a certain sense a promissory note or any credit is property. Whether "solvent," as the term is ordinarily employed, or not, it may be assigned for value; it would be difficult, however, to explain why a note discounted at twenty per cent. would be less appropriately called "property" than one sold at par. In any case, a credit has no

value other than the value it has acquired by reason of the probability that the property, having present actual value, *upon which a tax is levied and collected,* will be applied to the satisfaction of the claim it represents. He who has the property in possession must be taxed on its value, and the value once taxed cannot be retaxed without a violation of the constitutional provision that each value shall be taxed proportionately to the sum of all the values.

The sovereign power of the people, in employing the prerogative of taxation, regards not the claims of individuals on individuals, but deals with the aggregate wealth of all; that which is supposed to be unlimited is here limited by an inexorable law which parliaments cannot set aside, for it is only to the actual wealth that governments can resort, and, that exhausted, they have no other property resource. This is as certain as that a paper promise to pay money is not money.

It may not be possible in every case to show that the debtor has paid the tax assessed to his creditor. But it admits of mathematical demonstration—if the other property in the State has been assessed at its value—that the money which shall ultimately satisfy the debt (if it is ever satisfied) has paid its tax. If it were practicable to assess all the property in the State at the same moment of time, it would be clear to every mind that an assessment of a credit was an attempt to transfer to it a value elsewhere assessed. It may happen, as the assessor goes his round, that the same piece of tangible personal property is in fact twice taxed; but in every such case the presumption is that he first found in possession has parted with it for its value; that when the second person is assessed, the first has received other property of like value to that twice assessed; so that the uniformity required by the Constitution is maintained in effect. But if a debtor is found to be the owner of one thousand dollars, and is assessed for that sum, and his creditor is found to be the owner of his note for one thousand dollars, and is assessed for a like sum; and if, the day after the visit of the assessor to the creditor the debtor shall pay his note, it is clear that the same value has been twice

taxed; since the debtor has parted with his money, and received only that which is certainly not taxable property in *his* hands, and which can never afterwards be assessed. When a debtor pays his debt he does not abstract or destroy any portion of the taxable property of the State; the aggregate of values remains the same.

In *People v. Eddy* (43 Cal. 336), this Court said: "The word 'property' is used in that section of the Constitution in its ordinary and popular sense, and this is the general rule in the interpretation of constitutions and statutes, unless the context shows that the words are used in a technical or some arbitrary sense." With this general proposition I fully agree, but I am not prepared to admit that, in its vulgar sense, the word "property" includes *all choses in action*. And I feel compelled to dissent from the statement which follows, in the same opinion: "There is no good reason to believe that the word was used in that section (section thirteen, Article XI), in a sense materially differing from that which it has in other sections of that instrument." A single illustration will show that the foregoing is not literally correct. It has never been doubted in these arguments that gold and silver money is property which may be taxed. Such coins are more than promises to pay; they are composed of metals recognized as standards of value throughout the commercial world, and everywhere of purchasing capacity. But it has been repeatedly held that the clause of the Constitution (Article I, section eight): "Nor shall private *property* be taken for public use without just compensation," prohibits the taking of money. The reason is apparent. The compensation spoken of is money, and it would lead to an absurdity to say that money should be taken for the public, only in case an equal sum of money should be paid to the citizen when the money was taken. Such is the uncertainty of human language, that it is absolutely necessary to consider the *context* in order to determine the sense in which a particular word is employed, if it can ever be employed in more than one.

The facts of the present case do not present any question as to the power of the Legislature to require the payment

of a specific sum by way of license for the transaction of a particular business, or the performance of particular acts.

The views above expressed remove the objection heretofore resorted to, that the creditor cannot complain if the debtor shall pay a double tax. The creditor can always complain, because the credit should not be taxed at all, inasmuch as it has no independent value, and, therefore, cannot be taxed in proportion to such value (as part of the aggregate of values) in the manner required by the Constitution.

And in the foregoing an effort has been made to abstain from any reference to the moral effects of a species of legislation which ordinarily transfers the burden of taxation from the lender to the borrower, and encourages misrepresentation and perjury by permitting the collection of a tax to depend upon the oath of the creditor based on his *opinion* of the solvency of his debtors. The case should be decided by reference to the power of the Legislature under the Constitution.

I am of the opinion that "credits" are not "property" subject to taxation within the meaning of the section of the Constitution above quoted.

Judgment reversed and cause remanded. Remittitur forthwith.

WALLACE, C. J., concurring:

The question in hand is whether "credits" are "property" in the sense in which the latter word is employed in the thirteenth section of the eleventh article of the Constitution, which requires all "property" to be taxed in proportion to its value.

It is not doubted, of course, that even though credits be not property in the sense referred to, and consequently, not to be taxed *as property*, the Legislature may, nevertheless, in its discretion, impose a tax upon such credits, as for instance, it may require stamps of graduated denomination to be affixed to each promissory note or evidence of indebtedness executed, which form of tax, when put in operation, would probably enable everybody (certainly all borrowers)

to realize the important truth, that a tax imposed upon credits, *in whatever form it be imposed*, must always be paid, *not by the creditor, but by the debtor*.

Returning, then, to the question whether credits must be considered to be "property" in the sense adverted to, it will be remembered that the affirmative was maintained here in *People* v. *McCreery* (34 Cal. 432), and upon the authority of that case was assumed in *People* v. *Eddy* (43 Cal. 331). The question, however, involving as it does the correct construction of the text of the Constitution itself, in respect to a matter of such great and constantly recurring importance as the working of the general revenue system of the State, is not, in my opinion, to be determined by reference to mere precedents, or to decisions already made.

Considerations, upon which the doctrine of *stare decisis* is supposed to be founded, certainly do not attach to a controversy of this character. A re-examination of the general question, wholly unembarrassed by what our predecessors or we ourselves may have said, if seen to have been ill-founded in law, does not involve either the possible disturbance of vested rights, or the overthrow of rules of property supposed to have become fixed and settled.

I am of opinion that credits are not property, in the sense in which the word "property" is used in the thirteenth section of the eleventh article of the Constitution. That credits are correctly designated as "property," in a general sense, no one of course will deny; and that they fall within the true meaning of that word, as employed in other portions of the Constitution, is readily conceded.

But, as observed by Vattel, "it does not follow either logically or grammatically that because a word occurs in one section with a definite sense, that therefore the same sense is to be adopted in every other section in which it occurs." (Book 2, Ch. 17, Sec. 285.)

It certainly requires neither discussion nor authority to show that in searching for the true sense in which a word has been used in a particular instance, it is proper—in fact, often indispensable—to consider as well the subject-matter which it concerns, as the immediate connection in which it

was used.   Neither philology, nor criticism, of themselves, afford safe rules for the interpretation of the language of statesmen used in establishing a system of finance, and providing for the fiscal necessities of the State.

The language found in the thirteenth section of the eleventh article of the Constitution, referred to, is as follows: "Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value," etc.

This provision of the Constitution established the cardinal rule that property taxation in this State should always be imposed upon an *ad valorem*, as contradistinguished from a specific basis, and may be paraphrased thus: "All the actual wealth within this State shall be equally burdened with the support of the Government." That "property," as here employed in the Constitution, and "actual wealth," as used in the paraphrase, are synonymous, and that each of them alike excludes mere credits, is believed to be demonstrable. In the nature of things, both the scale of public expenditure indulged and the consequent degree of taxation necessary for its supply have reference to the actual aggregate wealth for the political community to which government looks for support. These habitually vary as the State is popularly said to be comparatively rich or comparatively poor.

The Legislature, in making up the budget, must necessarily therefore look to the aggregate amount of actual wealth in the hands of the people and borne upon the tax-rolls. This constitutes the capacity to pay, which it is always indispensable for the statesman to consider. And in considering it, how, it may be asked, can it be supposed that the aggregate wealth of the people—their actual capacity to pay taxes—is at all made up of credits—the mere indebtedness owing by individual members of the body politic to others of its members?

An answer would perhaps most readily be found in supposing, were such a thing possible, that the entire tax-rolls exhibited nothing but such indebtedness. Taxation attempted under such circumstances would of course be wholly fanciful, as having no actual basis for its exercise.

It must result, therefore, that mere credits are a false quantity in ascertaining the sum of wealth which is subject to taxation as property, and that, in so far as that sum is attempted to be increased by the addition of those credits, property taxation, based thereon, is not only merely fanciful, but necessarily the unconstitutional imposition of an additional tax upon a portion of the property already once taxed. Thus, if there be within the State only one million and a half in actual material wealth, and if there be in addition a half million of credits, a tax of one per cent. imposed upon the two millions thus made up, will prove to be in reality a double tax upon that portion of the one million and a half of actual wealth which is represented a second time as credits; from which double tax the remainder of the actual wealth, however, will escape altogether. To illustrate: let it be supposed that it is shown by the roll that the one million and a half of actual wealth is made up of one million in *goods* and one-half million in *money,* and that the *loan* of the half million in money has created the half million in *credits.* It will be seen that while the one million in goods is set down upon the roll but once, the half million of money is set down twice for the purposes of taxation—once as money in the hands of the borrowers—again as money in the hands of the lenders—in the form of "credits"—that is to say, the promissory notes given by the borrowers. The goods being represented but once are taxed but once; the money, however, being represented twice upon the assessment-roll is twice taxed. This assuredly is not *the equal taxation of property* guaranteed by the Constitution.

The taxation thus imposed nominally upon "credits" having resulted in the double taxation of the money, the additional tax must, of course, be paid by some one. And here all human experience, as well as the settled theories of finance, concur that it is not the lender who pays—but the borrower. The borrower is the consumer. The interest which he pays to the lender is the prime cost of the delay for which he has contracted. If the government, by the imposition of additional taxes, increase the cost, the borrower, being the consumer, must pay it. The truth of this

proposition is indeed so generally recognized that it is not unusual to insert, in the instrument by which the repayment of the loan is secured, a distinct covenant upon the part of the borrower to refund to the lender all taxes which the latter may be compelled to pay by reason of the loan; and even where the covenant is omitted, the lender is doubtless fully protected at the expense of the borrower, by the exaction of an increased rate of interest upon the loan. To hold, therefore, that "credits" constitute "property" within the intent of the thirteenth section of the eleventh article of the Constitution, would be to attribute a meaning to the word property, as there used, which would not promote, but would utterly defeat the uniformity of property taxation in this State which it was the principle purpose of that section to secure.

I, therefore, concur that the judgment of the court below be reversed.

CROCKETT, J., concurring:

I concur in the opinion of Mr. Justice McKINSTRY; and while it is not to be denied that the proposition that solvent debts are not "property" for the purposes of taxation within the intent of Article XI, section thirteen of the Constitution, it is in conflict with several prior decisions of this Court. I am satisfied, upon more mature deliberation and in the light of the later and more exhaustive arguments of the questions, that the former rulings on this point cannot be supported. The Constitution being the fundamental law, it is of the utmost consequence to the people that its provisions should be properly construed. This is peculiarly true of those provisions relating to the power of taxation—a power more subject to abuse than any other, and which directly affects the interest of every citizen. Whatever weight may be due to the rule of *stare decisis*, as applied to other subjects, it ought not, in my opinion, to prevent a return to a proper construction of those provisions of the Constitution which affect the vital question of taxation. No great property rights have grown up under the former construction, which can be injuriously affected by the change in the rule; and

I discover no sufficient reason for persisting in a construction, the only effect of which, in a large majority of cases, is, to inflict upon the borrowers of money an unjust and oppressive system of double taxation. That this is the necessary result of a tax on debts secured by mortgage for money loaned, is, in my opinion, too plain to admit of debate. In the case of the *Savings and Loan Society* v. *Austin* (46 Cal. 415), I have stated at length my reasons for that opinion, and it is unnecessary to repeat them here. I still adhere to that opinion; and in addition to the reasons stated by Mr. Justice McKINSTRY why the tax involved in the present case should be set aside, I think that the facts disclosed by this record present a clear case of double taxation of the same subject-matter; and the tax having been paid by the mortgagors, cannot again be collected from the mortgagee.

But while holding that solvent debts are not "property" in the sense of Article XI, Sec. 13, of the Constitution, and therefore are not required to be taxed on the *ad valorem* principle, it does not follow that the Legislature is for that reason powerless to tax them in some other form. It exercises unquestioned the right to tax avocations, not because an avocation is property, but because the power and mode of taxation are unlimited, except in so far as they are restricted by the Constitution; and Article XI, Sec. 13, prescribes the method only in respect to such subjects of taxation as are "property" in the sense of that clause. Solvent debts not being "property" in that sense, cannot be taxed as such under that provision, as was attempted to be done in the present case. But it might be competent for the Legislature to require a stamp tax on a mortgage or a promissory note, for the same reason that it may tax the avocation of an auctioneer. In that event it would be a tax on the transaction of making the note or mortgage, and not a tax on the debt as property.

Mr. Justice RHODES dissented.