## H. HACKFELD & CO. *vs.* G. H. LUCE, TAX COLLECTOR.

HEARD BY FULL COURT BY CONSENT—JURY BEING WAIVED.

THE DEFENDANT as Tax Collector collected taxes on certain debts payable to the plaintiffs, which said debts were secured by mortgages on real and personal property in the Kingdom; this mortgaged property was also taxed without deduction by reason of its being mortgaged, or that its owner owed debts; likewise on certain other debts payable to certain other persons not resident in this Kingdom, for which non-residents these plaintiffs are agents;

H. Hackfeld & Co. *v.* G. H. Luce, Tax Collector.

HELD, that notes and securities in this country owned by non-residents have a *situs* here, and are properly taxed;

*Also, held,* the fact that the mortgaged property is also taxed does not make the tax on the credit thus secured a case of double taxation.

Opinion of the Court by HARRIS, C. J.

This is an action to recover back the amount of a tax or of taxes assessed last year on the plaintiff for personal property in his possession by the Assessor of the District of Honolulu, and paid by them (the plaintiffs) under protest to the Collector of the said district.

The complaint sets forth that the defendant has collected and received the sum of $3,870.93 as taxes for the current year, assessed on " certain debts payable to the plaintiffs, which said debts are secured by mortgages on real and personal property in this Kingdom, on which said mortgaged property taxes for the current year were assessable and collectable by law without deduction or allowance by reason of said mortgages or debts; and likewise on certain other debts payable to certain persons, not resident in this Kingdom, for which non-residents these plaintiffs are agents."

At the hearing it was made to appear that the whole capital sum, which these plaintiffs aver has been illegally taxed, is $516,126.24, divided in the following way: $434,253.20 debts due plaintiffs on their own account, and $81,873.04 amounts payable to non-residents, for which the plaintiffs are agents.

A. S. Hartwell for the plaintiffs:

I. The statute requires *ad valorem* and certain specific taxes on property, and certain personal taxes on polls and for roads and schools, otherwise there is no personal taxation. It does not provide for deducting mortgages from the value of mortgaged property, but expressly taxes real estate for its full cash value, irrespective of any mortgage. Mortgages have value, but only as they represent the value of the property mortgaged, which is taxed, and the solvency and ability of the mortgagor to pay, which is not taxable. All values, as for

instance skill in business, are not taxable, but except the personal and specific taxes above referred to, only tangible property. A mortgage does not duplicate or create tangible and taxable property, for if it did it would be easy to accumulate. The view that property taxed in one form should not be taxed in another is taken by this Court in the recent cases of Wailuku Sugar Co. *vs.* Luce, and Haiku Co. *vs.* Luce, in which a tax was not sustained on shares in agricultural corporations, on the ground that the tax on the corporate property was substantially a tax on the shares, and this although the statute requires taxation of "shares in corporations," and does not provide for deducting tax on corporate property.

The inference in cases of doubt is that duplicate taxation is not intended—Cooley on Tax, p. 165; and that tax laws are not extended to objects not clearly expressed to be within their intent—*Ib.*, p. 201. The statute enumerates moneys, notes of hand and unsecured debts, but not mortgages or secured debts, although before the amendment of 1876, "all mortgages" were expressly mentioned as taxable. Civil Code, Section 483. This change and omission are significant. The maxims *expressio unius* and *expressum facit* particularly apply to legislative acts. Broom's Max., p. 665. If the Legislature meant to tax mortgages, it should have expressed such intention. A mortgage may or may not be accompanied by a promissory note; it may provide for future advances, debts due or not due, or be a second or later mortgage. A taxable value should not be made of each new mortgage.

An unsecured debt may be taxed, while a secured debt is not taxed, from the view that the latter represents the tangible and taxable value of the mortgaged taxed property, and indicates that money has probably been used to purchase or improve such taxed property; while the unsecured debt is more likely to be for the articles consumed in use, for services, or other untaxable or untaxed equivalents. The mortgagor, first or last, pays the tax on the mortgage, as well as on the mort-

gaged property, because rates of interest tend to be higher if taxes are deducted from the value of the mortgage.

After much litigation in the California Courts, they have finally settled that mortgages are not taxable property. This view is strongly approved by able writers, and would promote industrial interests by lessening burdens on the borrowing and producing classes; 51 Cal., 243; Arts. in Atl. Mon., Oct. and Dec., 1878.

II. Alien non-residents' mortgages are not taxable for debts owing to them here, secured by mortgages on property in this Kingdom, on the principle *mobilia sequuntur personam*, as well as on the meaning of the Constitution, Article 14, requiring "each member of society," (not foreign non-residents) to contribute to its burdens. In Hackfeld *vs.* Min. Fin., 3d Haw. Rep., 292, this Court held that personal property out of the Kingdom is not even taxable to its resident owners. In State Tax on Foreign-held Bonds, 15 Wall., 322, the Supreme Court of the United States held, that alien non-resident owners of bonds secured by mortgage on real estate in Pennsylvania, were not taxable therefor, and that, not solely on constitutional grounds of interfering with commerce, but, as the Court said, because, "debts can have no locality—separate from the parties to whom they are owed," and that "the property mortgaged * * * was taxable there, if taxation is the correlative of protection." The decisions in 21 Vt., 158; 23 N. Y., 234, and 51 Barb., 352, cited in that case in favor of the tax, did not cause the Court to sustain the tax. The Courts in California, Iowa, Maryland, Nevada and New Jersey, appear to have taken like views. Cooley on Tax., pp. 15, 269, *et passim*; Hilliard on Tax., pp. 132, 191.

Money collected in England from debts owing there to a British-born subject, who died domiciled abroad, and bequeathed to legatees in Scotland, pays no legacy tax, on the ground that "if a testator has died out of Great Britain with a domicil abroad, although he may have personal property

that is in Great Britain at the time of his death, in contemplation of law that property is supposed to be situate where he was domiciled." Per Lord Campbell in Thomson *vs.* the Adv. General, 12 Cl. and Fin., 28.

## BY THE COURT.

Section 483 of the Civil Code, as amended September 20, 1876, reads as follows: "All personal property of whatever kind, not subject to specific taxes, or specially exempted from taxation, shall be subject to an annual tax of three-quarters of one per cent. upon the full cash valuation thereof," and the same section proceeds to illustrate what is personal estate, as follows: "The term personal property shall be construed to include all household furniture, goods and chattels, wares and merchandise, all ships and vessels, whether at home or abroad, all moneys, notes of hand, unsecured debts, growing crops, public stocks, stocks in corporations, and every species of property not included in real estate."

The Constitution (Article 14) reads as follows: "Each member of society has a right to be protected by it, in the enjoyment of his life, liberty and property according to law; and, therefore, he shall be obliged to contribute his proportional share to the expense of this protection, and to give his personal services, or an equivalent when necessary; but no part of the property of any individual shall be taken from him, or applied to public uses without his own consent or the enactment of the Legislative Assembly."

Thus it will be seen that our Constitution directly asserts that the obligation to pay taxes is in consequence of and reciprocal to the protection which the individual receives from the Government as regards his life, liberty and property, and in this it corresponds with the *dicta* of text-writers and the decision of the Courts upon the matter. See Vattel, Book I, Chapter 20, Cooley on Tax., p. 14.

It is true, that the mere right of a foreign creditor, to receive from his debtor within the State, payment of his

H. Hackfeld & Co. *v.* G. H. Luce, Tax Collector.

demand cannot be subjected to taxation, for this is a right personal to the creditor, where he resides.

The creditor cannot be taxed, because he is not within the jurisdiction and the debts cannot be taxed in the debtor's hands, for they are not his property in any sense; they are the obligations of the debtors and possess value only in the hands of the creditors. See Cooley on Tax., pp. 15, 16, and the cases cited in the note, and more especially the case of State Tax on Foreign-held Bonds, 15 Wall., 300 to 319 and 320.

Though a personal tax cannot be assessed against a non-resident, nor can the property of a non-resident be taxed unless it has an actual *situs* within the jurisdiction, so as to be under the protection of its laws, it is quite competent for any government to provide that any tangible personal property situated within its jurisdiction may be taxed there irrespective of the residence of the owner. See Cooley on Tax., p. 43, and the cases in the note referred to; and more especially, the People *vs.* Ogdensburg, 8 N. Y., 390; Hoyt *vs.* Com. of Taxes, 23 N. Y., 224, as well as People *vs.* Gardner, 51 Barbour, 353.

So that the question arises whether the notes and securities which the plaintiffs allege are in their possession, as agents of persons residing in foreign countries, are property; and if they are property, whether they have a *situs* within this country. It is first to be observed, that the plaintiffs allege themselves in their complaint as well as in their protest to be the agents of these parties. On the witness stand they produce the notes and securities; several of the securities run in the name of the plaintiffs, though they are held for account of their principals.

Now, we have said above that tangible personal property may be taxed where it is, irrespective of ownership, if the statute shall so provide; and property held in trust should be assessed to the trustee where he resides. Cooley on Tax., p. 270, Chapter XII. In this country the statute does provide that all personal property shall be taxed.

23

The last clause of Section 483, of the law quoted above, does not enlarge nor limit the principle of taxation set forth in the first clause of the section, but merely illustrates what may be considered personal property and still leaves the principle the same, that all personal property within this Kingdom is to be taxed. The statute in this respect is the same as it is in many of the States of the United States and notably in the States of New York and Vermont, to the decisions of which States we refer.

The case of the People *vs.* Gardner, 51 Barb., 353, in which the people are made the nominal plaintiffs by the relation of Cyrus Jefferson, against the town of Warsaw, was a case to determine whether capital invested in Wisconsin and Illinois, for which securities were taken and held in those States by the relator's agents, were liable to taxation in New York, and the proposition was that if the property could legally be held to be in the State of New York at the time of the assessment, in consequence of the residence of Jefferson within the State of New York, then the assessment was legal and proper. But, if, on the contrary, the property ought to be considered to be in Wisconsin or Illinois, then the assessment in New York was illegal; and the argument set forth in the opinion of the Court is so applicable to this case that we quote from it largely.

"It is clear," says the Court, "that the property, on account of which the assessment is made, had no actual location or *situs* within this State (New York). For the moneys loaned and the securities taken and held for the payment of such loans were actually in the States of Wisconsin and Illinois. So far as they were things having a substantial existence, they were in those States and not elsewhere." Applying that to the case before us, the property in question has no *situs* in Germany where the persons reside for whose benefit the securities are held, but so far as they have a substantial existence anywhere, they are in this country. We continue the

quotation, "The validity of the agreements, under which the loans were made, the protection of the securities taken for their payment and the remedies provided for enforcing the securities depend alike upon their laws; and in no respect do the persons, for whose benefit the securities are holden, derive any benefit from the laws of the country in which he resides."

Again, the Court says, "by a legal fiction, the personal estate of the owner has for some purpose been deemed to follow its owner, but in the adjustment of systems of taxation, this fiction has been very generally rejected on the ground that it was productive of unjust consequences. And other cases exist where, for a like reason, its application has been denied. As to visible and tangible personal property capable of having a *situs* away from the owner or its domicile, this fiction has not been allowed to prevail."

Says Judge Comstock, in People *vs.* Commissioner of Taxes, 23 New York, 234, "the property must be within this State in order to be subject to taxation, for so is the statute; it may be true of obligations for the payment of money due to a creditor resident here, from a debtor whose domicile is another State, that such property may be regarded as being in the State where the creditor resides. But, when the securities are separated from the person and domicile of the owner, and are actually in the hands of an agent in another State, for collection, they must be regarded as being in the State where the securities are."

The case of Catlin *vs.* Hull, 21 Vermont, 152, presents exactly a similar case to this under consideration. The statutory provisions are similar to our own. The money belonged to a person resident in the city of New York, and was loaned on a promissory note by an agent residing in the State of Vermont, and the securities were in the hands of that agent. It will be seen that the case is identical with this under contemplation. The Supreme Court of the State of Vermont held that the property was taxable in that State, and rejected

the application of the legal fiction that the *situs* of the property followed the owner. This case has since been frequently cited with approbation and its reasoning followed.

In the case of the People *vs.* the Trustees of the Village of Ogdensburg, decided in 1872 (48 N. Y., 397), it is held that "debts due upon these contracts (for the sale of lands) are personal estate, the same as if they were due upon notes and bonds; and such personal estate may be said to exist where the obligations for payment are held. Notes, bonds and other contracts for the payment of money have always been regarded and treated in law as personal property. They represent the debts secured by them. They are the subject of larceny, and the transfer of them transfers the debt. If this kind of property does not exist where the debtor may be and follow his person, where does it exist? And while, for some purposes, by legal fiction it follows the person of the creditor and exists where he may be, yet it has been settled that for the purpose of taxation, this legal fiction does not to the full extent apply, and such property belonging to a non-resident creditor, may be taxed in the place where the obligations are held by his agent."

In Thorndike *vs.* the City of Boston, 1 Metcalf, 242, it was held that the plaintiff, who had changed his domicile to Edinburgh, was not liable to taxation in the city of Boston on any of his personal property.

So likewise in Sears *vs.* City of Boston, 1 Metcalf, 253, it was held that the plaintiff was rightly taxable in Boston, though residing in Paris at the time, because he was only temporarily absent and had not changed his domicile; it being plainly intimated that if he had changed his domicile he would not have been liable to the tax.

But the statute of Massachusetts reads: "All property real and personal of the inhabitants of the State shall be subject to taxation;" whereas our statute says that, "All property of whatever kind shall be subject to an annual tax," without

limitation to the property of inhabitants, but meaning to tax all property within the jurisdiction, whether belonging to inhabitants or not.

So that by reason and authority it would appear that the State has authority to tax all property within its jurisdiction; that it has exercised that authority; it is the duty of the Court to give weight to the enactments of the Legislature; and the notes and security, the subject of this controversy, and held for the benefit of persons residing abroad, are property having a *situs* within this country and are properly taxed.

Nor will it make any difference that the owners of this property may be liable to taxation in another country on account of it, for this would not justify a Court in disregarding the positive directions of our own Legislature. Hilliard on Taxation, Chapter 1, Section 8; Bemis *vs.* City of Boston, 14 Allen, 368; Catlin *vs.* Hull, 21 Vermont, 152, above cited.

The arguments which have been set forth above, and the authorities which have been adduced to support them, seem to dispose of the whole matter before us. But inasmuch as a special point is made by the protest to the effect that "the debts upon which these plaintiffs are assessed are secured by mortgages on real and personal property in this Kingdom, on which said mortgaged property taxes are assessable and payable by law, without allowance or deduction by reason of any mortgage thereon, and therefore such assessments and collection are illegal," we will somewhat farther consider this particular phase of the case.

And first, it is argued that credits are not property, and we are referred to People *vs.* Hibernia Bank, 51 Cal., 243, and to certain articles recently appearing in periodical literature over an illustrious name.

Now, solvent credits have always been hitherto reckoned as property. Hilliard on Taxation, Chapter V, Section 43. And our statute itself enacts that "notes of hand and unsecured debts" are property; and having designated these as included

in the term "personal property," states that "every species of property, not included in real estate, is the subject of taxation." Now all the sums, the subject of this controversy, are represented by notes of hand, and therefore by the statute are property, and the subject of taxation. But it is further argued that these notes of hand should not be taxed, because that the statute enumerates "unsecured debts" as an example of personal property which must be taxed; and these notes being secured by a mortgage are therefore untaxable.

This argument is made on the principle of the legal maxim which may be phrased, "the enumeration of certain items intends the exclusion of those not mentioned." This position is manifestly untenable, because a "note of hand," which is taxable property by statute, does not cease to be a "note of hand" when it is secured by a mortgage.

The phrase "unsecured debts" is not meant to exclude notes that happen to be secured by a mortgage, but it is meant to apprise the tax assessors that other kind of debts beside those represented by "notes of hand," even though unsecured, are property; as for instance, book accounts, being accounts against solvent-debtors, are property and the subject of taxation.

In the case of the People *vs.* Hibernia Bank, 51 Cal., 243, it is said that credits are not property subject to taxation, and an illustration is as follows:: If a debtor is found to be the owner of $1,000, and is assessed for that sum, and his creditor is found to be the owner of his note for $1,000, and is assessed for a like sum, and if the day after the visit of the assessor to the creditor, the debtor shall pay his note, it is clear, that the debt has been taxed twice, since the debtor has parted with his money, and received only (his own note) that which is not taxable property in his hands, and which can never afterward be assessed. When a debtor pays his debt, it does not obstruct or destroy any portion of the taxable property of the State; the aggregate value remains the same. However

sound this course of reasoning may be in California, it would not be effectual in this country, for it has been the custom here, ever since the foundation of the Government, to allow debts, due and owing by the taxpayer to be deducted from the value of his personal estate and to assess his taxes on the balances; so that the man who had the $1,000 in his hands by borrowing and who owed the note, would deduct the amount of his bill payable before assessment. Thus, if A had $1,000, and B had nothing, and borrowed the $1,000 of A to go into business with, we have been accustomed to consider that B was no richer, and A no poorer by their transaction; that B was a mere employer of A's money, and that B was no more able to pay taxes than before he borrowed the $1,000, and A no less able to pay taxes. It was even the custom, before the amendment of Section 484, of the Civil Code, to allow mortgages to be deducted from the value of real property. By Chapter LXII, of the Session Laws of 1876, it was enacted: "There shall be assessed and collected upon all real property within the Kingdom, not specially exempted from taxation, an annual tax of three-quarters of one per cent. on the full cash value of the same, to be assessed in the district where situated irrespective of any mortgage." This change in the law regarding real estate was probably made to avoid the deduction of foreign mortgages, as well as to fix the taxation of real estate in the district where it is situated.

Thus it will be seen that in the case supposed by Judge McKinstry the creditor, as the one best able to pay the tax, would pay it in this country, and not the debtor, or man least able to pay it; at any rate, the same thousand dollars does not pay tax twice.

And even since the passage of the Act above alluded to, requiring real estate to be taxed for its full value, notwithstanding a mortgage, the man who owes the mortgage is always allowed to deduct the amount of his mortgage from the value of his personal estate, if he has any; so that the so-

called double tax is paid only when a man has a piece of real property which is mortgaged, and owns nothing else. Thus, if a man has in his hands $2,000, and a house worth $4,000, and owes a debt of $1,000, he would pay tax on $1,000 personal property and on the $4,000 for his house; but if his creditor desired security, and he was anxious to keep the money for the purpose of employing it in his business, and therefore gave a mortgage on his house, the mortgage, that is to say the security, would not make any difference in his position; he would still have to pay $4,000 on his house, and $1,000 on his personal property.

In arguing this case counsel asked, where is the justice in allowing persons to deduct the amount of their debts from the amount of their personal property and not from the amount of their real property? The answer is, it is a matter of policy, for which many reasons might be assigned were it necessary; but it is sufficient to say that the Legislature have so decided and the Court must obey the Legislature, and it certainly does not lay in the taxpayer's mouth to complain that he is unable to deduct his debts from one kind of property, because he is able to deduct them from another.

Judge Wallace, in rendering his opinion in the case above quoted, says that the Legislature, "in making up the budget, must necessarily look to the aggregate amount of the actual wealth in the hands of the people. This constitutes the capacity to pay, which it is always indispensable for the statesman to consider; and in considering it, how can it be supposed that the aggregate wealth of the people is all made up of credits, the mere indebtedness owing by individual members of the body politic to others of its members."

Now, we say likewise, that the aggregate of the actual wealth constitutes the capacity to pay. But, we say, likewise, that it is indispensable for the statesman to consider what individuals represent that aggregate wealth; what individuals have the capacity to pay; and it is certain that the creditor

class has more capacity to pay than the debtor class. In the case supposed above, the borrower, who is working with other men's money, has no capacity to pay at all, in comparison with the lender who has aggregated wealth.

The allegation that the borrower does pay the lender's taxes in the higher rate of interest demanded is an inference only. It does not appear that if mortgage loans be exempt from taxation they will be placed at a rate lower by the amount of the tax. This circumstance *inter alia* might be considered, but the controlling circumstances are supply and demand, the market value of the security and the character and necessities of the borrower. The rate of interest in this Kingdom has fallen from fifteen per cent. to nine, and even lower, during the years the tax has risen from nothing up to three-fourths of one per cent.

It has been said above that deduction is allowed from the personal property for the debts owed by the taxpayers; and that we might be entirely certain of this, we have sent for the assessment roll of one of the citizens, who was sworn to have owed the sum of $12,000, and we find that his personal property consists largely of schooners valued at say $34,500, from which he deducts $16,000 debts, and among the debts are noted, "Hackfeld & Co., E. Krull, $12,000."

But even in a case where the mortgaged property does pay tax, it is no hardship on the creditor that his debtor pays the tax.

There is no reason why A should not pay the tax on his property because that B, his debtor, pays more tax than he ought to on his property.

In the case of People *vs.* McCreary, 34 Cal., 432, the action was to recover from the mortgagee a tax levied on the debts secured by the mortgage; and one of the defenses was that inasmuch as the land covered by the mortgage was also taxed, it presented a case of double taxation; but it was held that if the facts presented a case of double taxation, it would be only

the mortgagor and not the mortgagee whose property was doubly taxed, and the latter could not complain because the former had been doubly taxed.

In People *vs.* Whartonby, 38 Cal., 461, it was held in the same way.

In Lick *vs.* Austin, 43 Cal., 590, it was the mortgagor who complained that his real estate had been taxed to its full value, without deducting therefrom the amount of the existing mortgage to which it was subject; which mortgage was a distinct subject of taxation under the statute, and it was claimed that this was a double taxation of the same subject matter.

But the Court held that it did not concern the mortgagor, whether the mortgaged debt was taxed in the hands of the mortgagee, and that he could not complain of double taxation, unless his own property was taxed twice; and it was farther held that a solvent debt, secured by mortgage, is property for the purpose of taxation.

Therefore, again by the light of reason and these authorities, as well as by our statute, the solvent debts of these plaintiffs are the subject of taxation, and they cannot complain, even if it were true that their debtors are taxed more than they ought to be; the only question for them is whether their own property is doubly taxed.

Judgment for defendant.

A. S. Hartwell for plaintiff.

Attorney General Preston for defendant.

Honolulu, February 22, 1879.