Wilson, J.
This suit involves the question, whether, under existing laws, a newspaper membership in, or contract with, the Associated Press is subject to taxation. In 1896, within the proper time required by law, the Rocky Mountain News Printing Company, proprietor and publisher of the Rocky Mountain News, a daily newspaper, defendant in error, made out and returned to the assessor of Arapahoe county a schedule showing the taxable property of which it was possessed in said county on May 1 of that year. Thereafter, the assessor, without the consent of said company, added to the schedule another item, as follows: “ The Western Associated Press, $25,000.” Upon the subsequent sitting of the county commissioners as a board of equalization, the matter was brought before them by the company, and resulted in a resolution by said board by which the item (there, however, designated as “ Contract Associated Press ”) was valued and assessed at $20,000, making a reduction of $5,000. From this action of the commissioners, the news company appealed, as provided by law, to the district court. There, the finding and judgment was in favor of the news company, and from this the county appeals to this court. In the petition of the news company to the board of equalization, the nature and character of the association known as “ The West *191 ern Associated Press,” and of the petitioner’s relation thereto, are thus set forth:
“ Sixth. Your petitioner claims that the amount of such assessment is unjustly, erroneously, improperly and unlawfully assessed; that the same is not property, but that the true description of the matter attempted to be assessed by the words ‘The Western Associated Press,’ and the words ‘ Contract Associated Press,’ is as follows: Prior to the incorporation of the company now known as ‘ The Associated Press,’ the owners of certain leading newspapers scattered all over the United States maintained a relation of comity with each other whereby the news gathered by any one, where the same was of a general and public nature, was wired to each of the other members of said newspaper fraternity. Such action arose out of the desire on the part of the newspapers in different localities to secure the news from foreign localities at the lowest possible expense, and the furnishing of such news so gathered by any paper local to a certain community was furnished to each of the other papers in accordance with a general understanding that such other newspaper would reciprocate as to the news in their localities. It was found that it would he more convenient to organize a central bureau for the receipt and dissemination of such news from and to the various newspapers which had theretofore been furnishing the news in the manner herein indicated, and so a corporation was organized known as the Associated Press, in the state of Illinois, having its headquarters in the city of Chicago, and the members of the newspaper fraternity hereinbefore alluded to, of whom your petitioner was one, took certain shares of stock in said company, which in the case of your petitioner was the sum of eight shares at fifty dollars a share, amounting to the sum of four hundred dollars.
“ The said company was not formed for pecuniary profit and is a nondividend paying organization and only issued sufficient of its stock for the purpose of securing sufficient capi-/ *192 tal to maintain a central and such branch bureaus for the receipt and dissemination of news as was thought advisable;
“ That of the stock so issued to your petitioner, the said corporation holds each and every share thereof in the city of Chicago, state of Illinois, and that said stock is not and never can be, worth an amount in excess of its par value, and is taxable, if at all, in the county of Cook in the state of Illinois, and not elsewhere;
< “ That said stock does not entitle the owner thereof to the 'receipt of news from said bureau, but the receipt of news is regulated by virtue of the same arrangement which was in existence before the said company was formed, the only difference being that now the newspapers gather such news and instead of furnishing it directly to their contemporaries, forward it first to said central bureau, from which bureau it is disseminated to all of the owners of newspapers who are members of said association of newspapers;
“ That the only value which said membership has arises from the fact that the said various newspapers so scattered throughout the United States, are willing to contribute the news of their respective localities through such central bureau to the newspapers of the city of Denver in consideration of the fact that the newspapers of the city of Denver will contribute the news of that locality to the said former newspapers.”
The allegation of fact there stated was sustained by the evidence. It further appeared from the evidence that the stock .subscribed for by the members of the association is retained by the officers at Chicago, and is nontransferable, except by the consent of the board of directors; that it can never be assigned except to some newspaper which the board of directors will consent shall go on the roll of membership; that it is also held by the association to effectively enforce the clauses in the by-laws providing for the forfeiture, under certain conditions, of membership rights; that the organization has agents all over the United States who telegraph items of news to the central office at Chicago, and thence it is wired *193 to the different cities where there are members of the association. Each newspaper on the roll of membership is also required to furnish to the agents of the association the news it has gathered during the day, thus insuring a complete interchange of news among the members of the association; that the expenses are equitably apportioned so as to make each member bear his just share of the cost of obtaining the news, a weekly assessment being levied for this purpose, such assessment upon the petitioner at the time of this attempted assessment being $175 per week; that this assessment, however, is not a fixed one, being changed from time to time as the necessities of the case may demand, and that each member has a voice in the management and control of the association.
■The petitioner contends that the assessment of this item was erroneous, and presents two legal questions for determination :
1. Is the membership in, or contract with, the “ Associated Press,” held by the defendant in error, property within the meaning of the revenue laws of the state of Colorado ?
2. Assuming that it is “property,” has- the legislature provided any way by which a correct valuation may be arrived at, or is there any practicable way by which a just valuation of it may be reached, and if so, then what is its valuation ?
Before entering upon a discussion of these questions, it may be well to state as a fundamental and universally recognized principle that the power of taxation is an incident to sovereignty, and that, as such, it belongs to the legislative department to determine the persons and objects to be taxed, subject to constitutional limitations, and to provide the necessary mode and provisions for making the law effective. Yunker v. Nichols, 1 Colo. 567; Stanley v. Little Pittsburg Mining Co., 6 Colo. 419. In other words, regardless of the constitutional provisions, the legislative branch of the state would have power to provide for the taxation of property, and where constitutional provisions upon the subject do ex *194 ist, they are to be regarded as limitations and restrictions upon the legislative power. It is also settled in this jurisdiction, however it may be in others, that although courts should not favorably consider objections to statutes framed in the interest of the public revenue, and providing for an exercise of the taxing power, except upon clear and convincing grounds, yet it is equally fundamental that great caution is to be exercised in construing a law imposing taxation, in order to arrive at the intention of the law-giver, for it is the intention that is to be enforced. People v. Henderson, 12 Colo. 371; Stanley v. Little Pittsburg Mining Co., supra.
In the latter case it was said by the court:
“ Where the object is plain and the language unequivocal, the effect must be given to the law by the courts, but burdens are never to be imposed upon citizens upon vague or doubtful interpretations. It has been well said, ‘ that the legislature is ever at hand to explain its own meaning, and to express more clearly what has been obscurely expressed.’ Citing Cooley on Taxation, 201-203.”
. The word “ property,” in its broad, general signification, means everything which is susceptible of ownership. In order, however, to constitute ownership, the right to the thing must present certain distinctive qualities. Anderson defines property to be, “ that which is one’s own; something that belongs or inheres exclusively in an individual person. * * * The right of property is that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the rights of every other individual in the universe. The absolute right of private property consists in the free use, enjoyment and disposal of all one’s acquisitions, without any control or diminution save only by the law of the land. * * * Everything which has an exchangeable value is property. The right of property includes the power to dispose of it according to the will of the owner. Labor is property. (Citing to this point the Slaughter House *195 Cases, 16 Wall. 127.”) Anderson’s Law Die. tit. Property.
A well known text writer defines the word briefly, as “ the exclusive right of possessing, enjoying and disposing of lands and chattels.” Smith, Personal Property, p. 1.
In Exchange Bank of Columbus v. Hines, 3 Ohio State Reports, p. 8, the court says:
“ Those things which constitute the subject-matter of private property are such as the owner may exercise exclusive dominion over in the use, enjoyment and disposal of them, without any control or diminution save only by the laws of the land. 1 Wend. Bla. 138. It is a fundamental principle that ‘property,’ considered as an exclusive right to things, contains not only a right to use those things, but a right to dispose of them, either by exchanging them for other things or by giving them away to any other person without any valuable consideration in return; or even of throwing them away, which is usually called relinquishing them. Rutherforth’s Institutes, 20 Puffendorf, eh. 9, b. 7. It is said that capability of alienation or disposal, either by sale, devise or abandonment, is an essential incident to property. 2 Kent’s Com. 317.”
In Wynehamer v. The People, 13 N. Y. 396, Judge Comstock, speaking for the court of appeals, says:
“Nor can I find any definition of property which does not include the power of disposition and sale, as well as the right of private use and enjoyment. Thus Blackstone says (1 Com. 138), ‘ The third absolute right of every Englishman is that of property, which consists in the free use, enjoyment and disposal of all his acquisitions, without any control or diminution save only by the laws of the land.’ Chancellor Kent says (2 Com. 320), ‘ The exclusive right of using and transferring property follows as a natural consequence from the perception and admission of the right itself;’ and again (p. 326), ‘ The power of alienation of property is a necessary incident to the right, and was dictated by mutual convenience and mutual wants.’ These definitions are in accordance with *196 the general sense of mankind. Indeed, if any one can define property eliminated of its attributes, incapable of sale and placed without the protection of the law, it were well that the attempt should be made.”
It will thus be seen, that in order to constitute property which is subject to ownership as the terms are used in their broad sense, there must exist — not only the right of use and enjoyment — but the exclusive right to alienate or transfer. There may be, of course, a qualified and restricted ownership of property, but where the word is used without anything in the context to show that it is intended to be used in a restricted or qualified sense, it must be taken to have been used in its broader and more general and extended signification or sense. People v. Eddy, 43 Cal. 336; People v. Hibernia Bank, 51 Cal. 243.
Section 3, article 10 of our state constitution provides, that “ all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws which shall prescribe such regulations, and shall secure a just valuation for taxation of all property, real and personal,” etc.
It is manifest that three things were attempted to be required : 1. That all taxes should be uniform upon the same class of subjects. 2. That they should be levied and collected under general laws. 3. That such general laws should prescribe such regulations as would secure a just valuation for taxation of all property, real and personal.
There is nothing in the context to indicate in the slightest degree that the word “ property,” as used in this section, was used in any other than its broad and general sense, as defined by the authorities which we have cited. Neither, however, was there anything in this section, or in any other section of the revenue article of the constitution, imposing upon the legislature any restrictions or limitations so as to preclude it, if it should see fit, from extending and enlarging the list of taxable subjects so as to embrace tangible and intangible things which might not be property under the broad defini *197 tion of the word, and which might he the subjects of qualified ownership only. It is proper, therefore, to refer to the statutory provisions hearing upon the subject, in order that we may see to what extent, if any, the legislature has availed itself of this privilege. Section 3765, Mills’ Ann. Stats., provides that all property, both real and personal, within the state not expressly exempt by law shall be subject to taxation. Section 3769 requires all taxable property to be listed and valued each year, and to be assessed at its full cash value. Section 3771 provides that taxes levied upon personal property shall be a perpetual lien upon such property, and that, if such tax be not paid within the proper time, the county treasurer shall collect the same by distress and sale of any of the personal property of the person assessed. Section 3782 defines the meaning of terms used in the revenue act. Among others, it defines “ personal property ” to include everything which is the subject of ownership, not included within the term “real estate.” It defines “full cash value” to mean, “ the amount at which the property would be appraised if taken in payment of a just debt due from a solvent debtor.” Section 3788 makes it the duty of the assessor to assess all personal property which is situate in his county on the first day of May in the current year, and every person is required to list his personal property in the county where the same is situated on said date. Section 3792 specifies the manner in which property shall be listed.
We do not find in any of these sections anything to suggest an intent to use the word “ property ” in any other save in its broad sense as heretofore defined, unless it he in its reference to the assessment of credits, and this can by no possibility embrace that which is sought to be taxed in the case under consideration. We may concede — yea we do concede— the contention of the county that the intent of the constitution and legislative enactments was to render liable to taxation all property within the state the subject of ownership. But that is not the question to be determined. The vital question is, what is property which is the subject of owner *198 ship within the intent and meaning of the statutes and the constitution? It is self-evident, that if the definitions of property which we have cited are correct — and that cannot he disputed — then the thing here sought to be taxed is not embraced within the provisions either of the constitution or of the statute. It is further self-evident that it is not embraced within any special provision of the statute. On the contrary, an examination of the character of the thing sought to be taxed, and an attempted application to it of the revenue provisions of the statute, considering them as a whole, exclude the idea of any legislative intent or purpose to include it. This contract with, or membership in, the Associated Press held by the petitioner lacked the two most essential .elements to constitute it “property,” as the term is used in the constitution and statutes. The petitioner had no right to its exclusive use or enjoyment, because this was subject to certain varying conditions imposed by the board of directors of the association, and by this board might be defeated, or taken from it, at any time. The petitioner had no right, whatever, to assign it, unless with the consent of this board of directors. Even the eight shares of stock which it was compelled to purchase in order to become a member of the association — an admission fee as it were — were not delivered to the petitioner, but were held by the association as a guaranty of the performance by petitioner of its agreements. The membership was more in the nature of a privilege — it simply authorized the petitioner to receive from the association, of which petitioner was itself a part, certain news, so long as it complied with the rules of the association and paid its estimated share of the sum necessary to gather and supply such news. That it does not come within the meaning of the revenue statutes is, we think, clearly apparent. It could not be levied upon and sold by the county treasurer to pay the tax upon it. It is true, that the statute provides that the treasurer may levy upon any other personal property of the person assessed in order to collect the tax, but we think this provision is only a cumulative remedy intended to give the *199 treasurer the power to levy upon other personal property for greater certainty or convenience of collection, or in the event of the removal or destruction of the personal property taxed, or of some other unforeseen contingency. We think the only reasonable construction of the statute is, that it was the intent to levy a tax only upon property which could itself be responsible for the tax, except it be in the nature of credits, which are specially provided for.
The membership under consideration more nearly resembles the membership in a voluntary association for mutual benefit, or in a stock board, where the member does not have the privilege of selling or assigning his “ seat ” without the consent of the association. It has been expressly held by the California supreme court that such a membership as the latter is not taxable property. San Francisco v. Anderson, 103 Cal. 70.
The court said:
“ It is a mere right to belong to a certain association with the latter’s consent, and to enjoy certain personal privileges and advantages which flow from membership of such association. Those privileges and advantages cannot be transferred without the consent of the association, and a forced sale of them would not give to the purchaser the right to occupy said ‘ seat.’ It is too impalpable to go into any category of taxable property.”
By the terms of section 3782, this membership or contract, if property at all, is personal property, and must be assessed at its full cash value, this being defined as meaning “ the amount at which the property would be appraised if taken in payment of a just debt due from a solvent debtor.” This would be impossible as to the membership or contract under consideration, because it has no public market value, and it could not be appraised as required by the statute, for the reason that it could not be taken in payment of a debt. It could not even be assigned by the holder in order to pay a debt, nor be subjected to a judgment against him. There being no possible means of ascertaining its value, it must be *200 left to the arbitrary determination of the assessor, or of the board of county commissioners. They might as well fix the amount at §100,000, as at §20,000. The board of commissioners this year might think the latter amount was fair and reasonable, but the board next year might think that the former amount was the proper sum to be assessed. We cannot concede that it was the intent of the legislature to thus make the rights and property of citizens subject to, and dependent upon, the arbitrary will of any official, or set of officials.
Again, all personal property must be assessed where it is on May 1 of the current year. Where would this be assessed ? The statute makes no provision for it. It provides for the assessment of credits at the place where the owner resides at such time. Even if this applied here, this contract has two parties to it: one the Press Association, and the other the news company. Each has an interest in it. Under its terms, each is charged with some obligation and duty to the other. Who is the owner of it, and to whom should it be assessed, if assessable at all ?
One valuable rule of statutory construction where there is ground for dispute as to the intent of the legislature, and meaning of the statute, is to consider the results of any certain construction. It is always presumed that the legislature in the enactment of a statute seeks to attain reasonable results and practical objects. If the construction here contended for by the county is correct, then every contract between individuals, which might be of value, or from which some pecuniary benefit or profit is derived, would be subject to taxation, however personal in their nature such contracts might be. For instance : a newspaper might have a contract with some man of great reputation and pre-eminent ability to act as its editor in chief. By reason of this, it might acquire a largely increased number of subscribers, increased patronage and an increased amount of advertisements by which it would receive large pecuniary profits. Can it be contended for a moment that such contract for the personal services of an *201 editor would be subject to taxation ? If so, by whom and bow could the value of the contract be fixed or determined ? If such a contract were taxable, the same rule would embrace all contracts for labor. The mere possession of real estate, a right of action, a right of appeal, have all been held in a qualified sense to be property. In the Slaughter House Oases, cited above, labor was held to be property. No one will contend, however, that these, or any of them, are subject to taxation under our statutes.
The contention of the county that the petitioner was not paying its just proportion of taxation, because its net profits during the year were largely out of proportion to the amount of actual visible, tangible property which it owned and listed in its schedule given to the assessor is without any force whatever. If the argument were of any effect in any case, who could determine what proportion of these profits were due to, and flowed from, the contract with the Associated Press? The attempted argument proceeds upon the fallacious assumption that the publication of the press dispatches, alone, contributes to and creates the profits of a newspaper. It is a matter, however, of common knowledge that there must be a variety of other things concurring to make a newspaper profitable. The skill and ability with which it is edited, the enterprise and energy which it displays in the securing and publication of local news, the mechanical makeup of the paper and its typographical appearance are all matters which have material and important bearing upon the success of a newspaper.
Counsel for the county have cited us to some authorities upon which they strongly rely in support of their contentions. The leading ones are: Adams Express Co. v. Ohio St. Auditor, 165 U. S. 194; and on petition for rehearing 166 U. S. 185; State ex rel. Milwaukee St. Ry. Co. v. Anderson, 90 Wis. 558; Hotel Co. v. Lieb, 88 Ill. 605.
•These are certainly authorities worthy of the highest consideration, and if they settled the questions involved in this case, we would not, unless for extraordinary reasons, hesi *202 bate to follow them, although the cases in the federal court were decided by a nearly evenly divided court. They are not in point, however. The two Ohio cases, in the United States supreme court, grew out of what is called the “Nichols’ law.” This state statute expressly provided that in the assessment and taxation of an express or other company, the board of assessors, in arriving at the value thereof, should take into consideration all of its property, tangible and intangible ; and further provided a specific rule for arriving at such valuation of intangible property. The state supreme court held the statute to be constitutional and valid. The question raised, considered and determined in the federal supreme court was whether the law was “ repugnant to the constitution of the United States because in violation of the commerce clause of that instrument, and because operating to deprive appellants of their property without due process of law and of the equal protection of the laws.” Statutory provisions similar to the Nichols’ law have been adopted in Indiana, Kentucky and Arkansas, authorities from which jurisdictions have also been cited to us. None of these authorities touch upon the pivotal question in this case, and the only question upon which we express an opinion. Here we have no statute similar in character to the Nichols’ law, and the only question to be determined by this court is, whether, under our statutes as they now exist, the membership or contract under consideration is subject to taxation. We positively disclaim any intention to express any intimation or opinion as to what the legislature might or might not do. We are concerned only with what it has done. We may heartily approve of everything that the majority of the United States supreme court has said in commendation of the justice and equity of the provisions of the Nichols’ law, and yet hold that the alleged property here sought to be taxed is not taxable under existing laws.
The Wisconsin case involved the question as to the liability to taxation of the franchise of a corporation. This does not arise in the case at bar. A franchise is defined to be “ a *203 particular privilege conferred upon individuals by grant from the government,” Londoner v. People, 15 Colo. 247; 3 Kent’s Com. 458.
As applied to corporations, it constitutes its right to do business, and, also, in so doing, to exercise certain special powers and privileges which do not belong to citizens of the country generally of common right, and is vested in the corporate entity.
The Illinois case arose under a statute which required corporations to list, in addition to their tangible property and the valuation thereof, the amount and market or actual value of their capital stock and their total indebtedness, and thereupon it was the duty of the state board of equalization to ascertain and determine therefrom “the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company.” The chief point upon which the case turned was the claim of the corporation that the listing by it of its capital stock, etc., was a necessary condition precedent to the validity of the assessment and valuation fixed by the state board, and that this had not been done by reason of the fact that it had not been furnished by the assessor or auditor, with the instructions or forms in conformity with which such listing was required to be made, nor had such list been demanded of it. For this, and the additional reason that the valuation and assessment of its capital stock was alleged to have been grossly unequal, unfair and oppressive, it was urged by the corporation that the tax levied upon the capital stock was absolutely void. It will be readily seen that the only question involved in the case at bar, as we view and determine it, did not arise in that cáse. There, the statute in express terms provided for the assessment, valuation and taxation of the property, the tax upon which was in dispute.
Some authorities have been cited to us bearing upon the right to assess for taxation purposes an entire newspaper plant, including all of its property and property rights as a unit, even though the assessed valuation should exceed the value *204 of all real estate and tangible personal property belonging to the newspaper company and connected with the business and management of the paper. That proposition is not involved in the case before ns, and hence we express no opinion upon it.
For the reasons given, we are of opinion that the membership in, or contract with, the associated press held by the news company was not property subject to taxation within the intent, provisions or meaning of either the constitution or of the statutes as now existing, and that hence the judgment of the district court was correct. It will be affirmed.

Affirmed.